STATE ex rel. BOARD OF PHARMACY EXAMINERS, appellant, v.
WALTER McEWEN, d/b/a MAC'S GROCERY, appellee.

No. 49694.

(Reported in 96 N.W.2d 189)

APRIL 8, 1959.

722

Norman A. Erbe, Attorney General, and Samuel G. O'Brien, of Des Moines, for appellant.

Brody, Parker, Miller, Roberts & Thoma, of Des Moines, for appellee.

LARSON, J.—The nub of this controversy is found in the trial court's affirmative ruling under R. C. P. 105 upon the following question: "Does the statutory definition of 'proprietary medicines' or 'domestic remedies' which is contained in Subsection 7, Section 1, Chapter 96, Acts of the 57th General Assembly, define said terms wherever the same may appear in Chapter 155 of the Code of Iowa, 1958?" Plaintiff-appellant contends this determination was erroneous. We agree with the trial court.

The plaintiff, State of Iowa on relation of the Board of Pharmacy Examiners of the State, brought this action in two counts. Count I sought an injunction against the defendant alleging that he was selling "drugs and medicines", to wit: aspirin tablets, at retail, without a license; and Count II sought a declaratory judgment as to whether the words "proprietary medicines" or "domestic remedies" referred to in section 155.3, Code of 1958, as defined by chapter 96, section 1, of the Fifty-seventh General Assembly, were applicable to the whole chapter, or whether said definitions in chapter 96 refer only to the provisions of the amending Act.

The pertinent facts are not in issue. The defendant, Walter McEwen, d/b/a Mac's Grocery, admits he has sold and is offering for sale Bayer aspirin tablets at retail, and that he has no pharmacy license of any kind. He contends that under the provisions of chapter 155, as amended, and specifically under

sections 155.2, subsection 4, and 155.3, subsection 7, he needs none. Section 155.2, subsection 4, of both the 1954 and 1958 Codes, provides that neither section 155.1, which designates those persons who engage in the practice of pharmacy, nor section 155.6, which prohibits certain drug sales by anyone but a licensed pharmacist, shall be construed to include the following classes: "Persons who sell, offer or expose for sale proprietary medicines or domestic remedies which are not in themselves poisonous or in violation of the law relative to intoxicating liquors."

Section 155.3, prior to the amendment found in chapter 96, Acts of the Fifty-seventh General Assembly, provides as follows:

*"For the purposes of this chapter:* 1. 'Drugs and medicines' shall include all medicinal substances and preparations for internal or external use recognized in the United States Pharmacopoeia or National Formulary, and any substance or mixture of substances intended to be used for the cure, mitigation, or prevention of disease of either man or animals. 2. 'Pharmacy' shall mean a drug store in which drugs and medicines are exposed for sale or sold at retail, or in which prescriptions of licensed physicians and surgeons, dentists or veterinarians are compounded and sold by a registered pharmacist." The Code editor has designated this section as "Definitions". (Emphasis supplied.)

The Fifty-seventh General Assembly, in "AN ACT *to amend* chapter one hundred fifty-five (155), Code 1954" (emphasis supplied), provided in section 1, chapter 96, as follows:

"Section 1. Amend section one hundred fifty-five point three (155.3), Code 1954, by adding the following subsections:

"3. The term 'board' shall mean * * *.

"4. The term 'person' means * * *.

"5. The term 'wholesaler' shall mean * * *.

"6. The term 'wholesale salesman' means * * *.

"7. For the purpose of this Act the term 'proprietary medicines' or 'domestic remedies' means and includes completely compounded packaged drugs, medicines and nonbulk chemicals which are not in themselves poisonous or in violation of the law relative to intoxicating liquors which are sold, offered, promoted

and advertised by the manufacturer or primary distributor directly to the general public under a trademark, trade name, or other trade symbol privately owned, whether or not registered in the United States Patent Office, and the labeling of which bears (1) a statement specifying affections, symptoms or purposes for which the product is recommended, (2) adequate directions for use and such cautions as may be necessary for the protection of users, (3) an accurate statement of the quantity of the contents in terms of weight, measure or numerical count, (4) a statement of the active ingredients, and (5) the name and address of the manufacturer or primary distributor: Provided, however, this definition shall not apply to the sale, or offering for sale, of any drug for use by man which is only advertised or promoted professionally to licensed physicians, dentists or veterinarians by the manufacturer or primary distributor, or the label of which bears the statement 'Caution: Federal law prohibits dispensing without prescription', or which sale is by law limited to dispensing by prescription.

"8. The provisions of this Act shall not apply to persons selling, offering or exposing for sale, the preparations referred to in subsections two (2), three (3) and four (4) of section one hundred fifty-five point two (155.2), Code 1954, or * * *."

Section 2, chapter 96, Acts of the Fifty-seventh General Assembly, added seventeen new sections to chapter 155, Code of 1954, which need not be set out herein. Section 3 repealed section 147.97 of the 1954 Code. Section 4 provided the effective date of chapter 96, Acts of the Fifty-seventh General Assembly.

It is conceded that under the decisions of this court prior to the amendments by the Fifty-seventh General Assembly, the sale of aspirin by others than licensed pharmacists had been denied. State ex rel. Missildine v. Jewett Market Co., 209 Iowa 567, 228 N.W. 288.

It was further conceded by the parties that if the definition of "proprietary medicines" or "domestic remedies" in section 155.3, Code of 1958, defines the term wherever it appears in chapter 155, and especially in subsection 4 of section 155.2, Code of 1958, plaintiff's action must be dismissed and the defendant may sell and offer for sale Bayer aspirin tablets, properly

labeled, without first procuring a license under chapter 155, Code of 1958.

Plaintiff contends, due to the use of the words "For the purpose of this Act" in subsection 7, of section 1, the legislature intended to restrict the definitions therein to only the provisions being enacted by chapter 96, Acts of the Fifty-seventh General Assembly. Defendant contends that when these words appear in the section amended (section 155.3) it is equivalent to re-enacting the whole section which starts out "For the purposes of this chapter", and that the words "For the purpose of this Act" refer to the original Act, and that the Code editor's inserted language in the 1958 Code of "For the purpose of division II of this chapter and subsections 3 to 8, inclusive, of this section", in lieu of the language "For the purpose of this Act", was improper and does not express the legislative intent.

I. In construing any particular clause or words of a statute it is especially necessary to examine and consider the whole statute, including the title, and gather, if possible, from the whole the express intention of the legislature. It cannot be resolved from isolated words taken out of context. Dingman v. Council Bluffs, 249 Iowa 1121, 90 N.W.2d 742, and citations; Spencer Publishing Co. v. City of Spencer, 250 Iowa 47, 92 N.W.2d 633, and citations; Nevada v. Slemmons, 244 Iowa 1068, 59 N.W.2d 793, 43 A. L. R.2d 693; In re Guardianship of Wiley, 239 Iowa 1225, 34 N.W.2d 593; Board of Directors v. Blakesley, 240 Iowa 910, 36 N.W.2d 751; Sinclair Refining Co. v. Burch, 235 Iowa 594, 16 N.W.2d 359. It is, therefore, important that we not only consider the provisions of chapter 155 prior to the Acts of the Fifty-seventh General Assembly, but also the language of the title and the provisions of the sections added by the amendments to chapter 155 by chapter 96 of the Fifty-seventh General Assembly. From these sources we may be able to gather the legislative intent in the use of the words "For the purpose of this Act" in subsection 7 of section 1, chapter 96.

II. As a general rule the words "this Act" as used in an amending statute refer to the original Act, not merely to the amending Act. Unless other language is found in the amending Act which indicates a contrary intention, there is a

strong presumption that this was the legislative intent. State ex rel. Griffith v. Anderson, 117 Kan. 540, 232 P. 238; Wright v. Cunningham, 115 Tenn. 445, 91 S.W. 293; State v. Buttignoni, 118 Wash. 110, 203 P. 76; State v. Berry, 103 Kan. 891, 176 P. 649; Village of Washington Heights v. Moffatt, 57 Ill. App. 269; Henry v. McKay, 164 Wash. 526, 3 P.2d 145, 77 A. L. R. 1025; Owen v. Off, Cal. App., 218 P.2d 563; Crawford, Statutory Construction, section 304, page 620.

In State ex rel. Griffith v. Anderson, supra, 117 Kan. 540, 541, 232 P. 238, 239, a statute forbade certain conduct on the part of any state or county officer. In an amendment to the section of that statute which fixed the penalty, the list of officers to whom the punishment was made applicable omitted all except the treasurer. This amended section was then changed by a further express amendment so as to include the provision: " 'any county officer * * * who shall violate *any of the provisions of this act* shall be deemed guilty of a misdemeanor.' " (Emphasis supplied.) The Kansas Supreme Court held that each section as amended became in effect a part of the original act, and the words "this act" in the second amendment referred not merely to the amending act but also to the original act as finally amended. It stated: "The first amendment of the penalty section at the time of its adoption became in effect a part of the act of 1867. When it was amended the original act was thereby amended, and the words 'this act' in the latest form in which the statute was cast referred to the whole act as finally amended, and not merely to the second amending act. [Citing cases.]" Also see authorities under "This Act" in Words and Phrases, Volume 41, pages 581, 582.

In Wright v. Norwich & N. Y. Transp. Co., 30 F. Cas. 685, 688, the court held that, in construing any particular clause or words of a statute it is especially necessary to examine and consider the whole statute, and gather, if possible, from the whole the intention of the legislature.

In Frix v. State, 148 Tenn. 478, 256 S.W. 449, the court laid down the rule that usually the term "this Act" refers to the whole Act unless limited specifically or by obvious intendment.

To the same effect is Village of Washington Heights v. Moffatt, supra, 57 Ill. App. 269, 276. There the court said: "The phrase, 'under the provisions of this act,' is used in several sections of the act of 1887, and one of the counsel * * * assumed, in argument, that the words 'this act' in that phrase meant the act of 1887, and upon this assumption insisted that the inference was, that the legislature recognized that there was another act, viz., the act of 1874, by virtue of which a special assessment, payable in installments, might be made. But this assumption is manifestly erroneous. The object of the act of 1887, as expressed in its title, is to amend article IX of the act of 1872 *by adding* thereto the sections contained in the act of 1887. These sections, therefore, *are to be read* as if following section 54 of article IX of the act of 1872, *in their numerical order*, and so reading them, the words 'this act,' refer to and mean the act of 1872." (Emphasis supplied.)

In Crawford, Statutory Construction, section 304, page 620, it is stated "the clear intent of the amending clause of a statute must prevail over contradictory provisions within any section thereof. And where the phrase 'this act' appeared in the amended section of a statute, it will generally refer to the original as well as to the amending act, although, of course, in order to remove any ambiguity in an amendment, the entire act should be consulted."

Plaintiff's contention that the legislature intended, by the use of such words at the beginning of subsection 7, to limit the definition therein set forth to the amendment, and that they are words of exception, is not borne out by the language in section 1 of the amendment, and the other sections of the Act are not too helpful.

The last sentence in subsection 6 of section 1, chapter 96, states clearly: "The term 'wholesale salesman' shall not apply to those salesmen who sell only the products defined in subsection seven (7) of section one (1) of this Act"; and subsection 8 of section 1, chapter 96, provides specifically: "The provisions of this Act shall not apply to persons selling * * *." These examples, we think, are clear indications that the legislature well knew how to exclude matters not intended to apply in either the amending Act or the original Act, and if subsection

7 of section 1, chapter 96, of the Fifty-seventh General Assembly, was not intended to apply to the original Act, it would have used more positive terms to exclude it.

It is true two new licenses were provided by section 2 of the amendment, i.e., a license for pharmacies and a license for wholesale druggists, but it is also clear both the licensed pharmacist and the pharmacies deal with retail sales. It is difficult to see why the legislature would desire a different definition as to proprietary medicines or domestic remedies as applied to those licensees.

We are mindful of the rule that it will not be presumed that useless words are inserted in a legislative enactment, but we are also aware that the words used and their significance are governed by well-recognized and established rules of law, hereinbefore mentioned.

We note that the draftsman who prepared this bill for the legislature sometimes used the term "this Act" and sometimes referred to "this chapter", but this is not helpful to us because in most cases the meaning becomes clear from the balance of the sentence. For example, our attention is called to the language in subsection 3(h) in section 2, chapter 96, which sets forth reasons for which licenses may be revoked, as follows: "Violations of the provisions of this act and chapter one hundred fifty-five (155), Code 1954." The subsection refers to the authority of the board to revoke licenses. Such language is not persuasive that the chapter and the Act were considered separate legislation. On the other hand, it is consistent with caution because there were additional licenses required by the amendment and the language used removes all doubt that licensees under the original Act are subject to the new authority of the board.

We are satisfied there is no language in the amendment indicating a legislative intention to exclude the original provisions of the chapter from the provisions of the amendment in subsection 7 of section 1, chapter 96, Acts of the Fifty-seventh General Assembly, and the definition therein must be applied to section 155.2(4) of the chapter. We are not convinced the different use of the words "this Act", "this chapter", or "this Act and chapter", discloses any intent to establish a new and

independent pharmacy Act. The legislature knew how to exclude where exclusion was desired, and where it wished to do so it left no doubt as hereinbefore stated.

III. In addition, in this jurisdiction we have adopted the rule that an amendment to a statute will be construed as though such amendment was a part of the statute when it was originally enacted. Spencer Publishing Co. v. City of Spencer, supra. On page 53 of 250 Iowa, page 636 of 92 N.W.2d, we said: "The rule is well settled that an amended Act is ordinarily to be construed as if the original statute had been repealed and a new and independent Act in the amended form had been adopted in its stead. Benschoter v. Hakes, 232 Iowa 1354, 1359, 8 N.W.2d 481, 485."

Here, then, we note the purpose of the Act was *to amend* chapter 155, Code of 1954. Section 155.3, Code of 1954, was specifically amended by adding in numerical order subsections 3, 4, 5, 6, 7 and 8. The part of section 155.3 which was left unchanged or re-enacted started out "For the purposes of this chapter", and then clearly sets out definitions of the terms used in the chapter. It is difficult to see an indication of any restriction in the new subsections to section 155.3 except those matters that are specifically excluded. We are, therefore, inclined to believe the words "For the purpose of this Act" in subsection 7 do not change the clear expression in section 155.3 as amended, which is that "For the purposes of this chapter" the definitions that follow, including subsection 7, shall be as set forth therein.

Section 155.3 and its predecessor have been designated as the definition section of this chapter, and, by amending this section rather than creating a new definition section to cover only the amendments to the chapter, the legislature must have intended the extension to apply to the original Act relating to the practice of pharmacy. This it may do, for we have repeatedly stated that the legislature is its own lexicographer, and common-law dictionary, and prior definitions by the court must yield when the legislature, by express enactment, defines its own terms. Cowman v. Hansen, 250 Iowa 358, 363, 92 N.W.2d 682, 685.

IV. We conclude, therefore, that section 1 of chapter 96, Acts of the Fifty-seventh General Assembly, including subsec-

730

tion 7, applies to the original provisions of chapter 155 as they appeared in the Code of 1954, and that defendant, when selling aspirin in compliance with the requirements of subsection 7, is not required to procure a license under subsection 4 of section 155.2, Code of 1958.

The trial court was correct both in its dismissal of the injunctive action and in its declaratory judgment, and its judgment is affirmed.—Affirmed.

All JUSTICES concur.