The HANOVER INSURANCE
COMPANY, Appellant,

v.

ALAMO MOTEL et al., Appellees.

No. 59886.

Supreme Court of Iowa.

April 19, 1978.

John D. Randall and Ronald W. Wendt of John D. Randall Law Offices, Cedar Rapids, for appellant.

J. W. Albright of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for appellees.

Considered by MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REYNOLDSON, JJ.

REYNOLDSON, Justice.

In this appeal, as a matter of first impression, we are required to interpret Iowa's statutes limiting the ancient law of innkeeper liability.

November 5, 1974, jewelry valued at $89,628 was stolen from a room in Alamo Motel, Coralville, which had been rented to a jewelry company's sales agent. Plaintiff insurance carrier paid the jewelry company $50,000 and became subrogated in that amount to the insured's claims.

October 6, 1975, plaintiff filed petition against the motel corporation, its owners and operators who are hereafter collectively referred to as "defendant." Plaintiff in three divisions alleged defendant was liable on theories of negligence, strict innkeeper liability, and implied contract.

Defendant, answering, asserted several affirmative defenses. Included was division seven, which alleged if plaintiff suffered any loss or injury in any of the ways alleged in the petition then defendant's liability would in no event exceed the amounts fixed by § 105.4, The Code, 1975. Pursuant to rule 105, Rules of Civil Procedure, defendant then moved for adjudication of the law point raised in division seven.

Following hearing, trial court ruled liability of defendant for property loss sustained by its guest was absolutely limited to a sum prescribed by the § 105.4 formula. In this case the maximum amount recoverable would be $500, defendant being willing to concede the two jewelry containers might be classified as trunks.

We granted permission to appeal from trial court's interlocutory order. See present rule 2(a), Rules of Appellate Procedure.

■ Plaintiff contends trial court erred in ruling § 105.4 is an "absolute overall limitation on the liability of hotelkeepers and innkeepers."

We agree, and therefore reverse and remand.

I. Plaintiff contends § 105.4 does not limit an innkeeper's liability for loss of or injury to "valuables" or precious articles, described in § 105.1, The Code, as "money, jewelry, articles of gold or silver manufacture, precious stones, personal ornaments, documents of any kind, or other similar property." Plaintiff argues § 105.4 merely limits liability relating to loss of or damage to property other than § 105.1 precious articles or valuables.

The issue requires us not only to examine this legislation in its historical setting, but to follow the evolution of statutory changes to arrive at the legislative intent and purpose.

■ At common law the innkeeper was held responsible for a guest's property to an extent as strict and severe as common carriers. *de Saric v. Miami Caribe Investments, Inc.*, 512 F.2d 1013, 1016 (5th Cir. 1975); *Link-Simon, Inc. v. Muehlebach Hotel, Inc.*, 374 F.Supp. 789, 792 (W.D.Mo.1974); Annot., Innkeepers—Loss of Guest's Property, 37 A.L.R.3d 1276, 1279 (1971); 40 Am. Jur.2d, Hotels, Motels, Etc., § 127, pp. 1000–1001 (1968); 43 C.J.S., Innkeepers, § 13, p. 1153 (1945). The rule devolved from the Roman era and was designed to protect travel and commerce in times of highwaymen who were often in league with innkeepers:

"Rigorous as this law may seem, and hard as it may actually be in some instances, it is, as Sir William Jones observes, founded on the principle of public utility, to which all private considerations ought to yield. Travellers, who must be numerous in a rich and commercial county, are obliged to rely almost implicitly on the good faith of innkeepers; and it would be almost impossible for them, in any given case, to make out proof of fraud or negligence in the landlord. The Roman praetor held innkeepers responsible for the goods of their guests, on the same principle of public utility. It was necessary, says Ulpian, in commenting on the edict of the praetor, to confide largely in the honesty of such men; and if they were not held very strictly to their duty they might yield to the temptation to commit a breach of trust. They were bound to answer for all losses, and damages happening even without their default, unless they were fatal losses, occurring from *vis major* or irresistible force." —2 Kent's Commentaries, p. 975 (14th ed. 1896)

See also *Minneapolis Fire & Marine Ins. Co. v. Matson Nav. Co.* 44 Haw. 59, 61, 352 P.2d 335, 337 (1960); *Shifflette v. Lilly*, 130 W.Va. 297, 300–302, 43 S.E.2d 289, 290–291 (1947).

While there is no Iowa decision directly on point, it appears common-law strict liability prevailed early in Iowa. In *Lyon v. Smith*, 1 Morris Iowa Reports 244 (1843), Lyon alleged his son had stayed at Smith's house, "had his horses put up, and tarried all night as a guest, and that in the morning two bridles, valued at six dollars, and one saddle, valued at fifteen dollars, were lost, and could not be found." *Id.*, at 244. Chief Justice Mason's opinion permitted Smith to escape liability on the ground he was not a common innkeeper. But it did not question the rule that had he been an innkeeper he would have been "responsible as an insurer of all the property of his guests, which may have been left in his keeping." *Id.*, at 246.

Innkeepers sought to limit the liability. The first effort in Iowa appeared in Laws 18th G.A., Ch. 181 (1880). Following certain amendments the revised statute appeared as § 6525 in the 1921 Code:

"Keepers of hotels, inns, eating houses and steamboat owners, who constantly have in their hotel, inn, eating house or steamboat, a metal safe, or vault in good order and fit for the custody of money, jewelry, articles of gold or silver manufacture, precious stones, personal ornaments, documents of all kinds, and other similar property, and who keeps on the door of the sleeping rooms used by guests suitable locks or bolts and proper fastenings on the transoms and windows of said rooms, and keeps posted up in a conspicuous place in the office or other public room in the guest's apartment therein, printed notices, stating that such places for safe deposit are provided for the use and accommodation of the inmates thereof, shall not be liable for the loss or injury suffered by any guest, in an amount to exceed one hundred dollars, unless said guest has offered to deliver such valuables to said hotel, inn, eating house, or steamboat keeper for custody in such metal safe or vault, and said hotel, inn, eating house, or steamboat keeper has omitted or refused to take and deposit same in such safe or vault and give such guest a receipt therefor. Provided, however, that the keeper of any hotel, inn, eating house, or steamboat shall not be required to receive from any one guest for deposit in such safe or vault any property exceeding the market value of five hundred dollars.

"The liability of the keeper of any hotel, inn, eating house or steamboat, for loss of or injury to personal property placed by his guests under his care, *other than that described in the preceding paragraph*, shall be that of a depository for hire; and in no event shall liability exceed two hundred fifty dollars for each trunk and its contents, one hundred fifty dollars for each valise and its contents, fifty dollars for each box, bundle or package and its contents and not exceeding one hundred dollars for any and all other miscellaneous effects of each guest * *."
(emphasis supplied)

It should be noted at this stage of the statute's evolution, limitation of liability as to precious articles or "valuables" was treated in the first paragraph; the second paragraph addressed itself solely to property "other than that described in the preceding paragraph." As to the latter class of property, which might be classified as baggage, two limitations applied. First, the liability of the innkeeper "shall be that of a depository for hire." Second, the total liability could not exceed the dollar limitations specified in that paragraph for each "trunk," "valise," "box," "bundle" or "package."

In the 1924 Code revision the above statute was broken into several sections which essentially appear in the same form in The Code, 1975:

"*105.1 Liability for precious articles— safe deposit.* No keeper of any hotel, inn, or eating house, nor the owner of any steamboat, shall be liable to any guest for more than one hundred dollars for the loss of or injury to any money, jewelry, articles of gold or silver manufacture, precious stones, personal ornaments, documents of any kind, or other similar property, if such keeper or owner at all times provides:

1. A metal safe or vault, in good order and fit for the safekeeping of such property.

2. Locks or bolts on the door and proper fastenings on the transoms and windows of the sleeping quarters used by guests.

3. Printed notices posted up in a conspicuous place in the office or other public room and in the quarters occupied by guests, stating that such places for safe deposit are provided for the use and accommodation of guests and patrons."

"*105.2 Exception.* The limited liability provided in section 105.1 shall not apply where:

1. A guest has offered to deliver such valuables to said keeper or owner for custody in such metal safe or vault, and

2. Said keeper or owner has omitted or refused to receive and deposit the same in such safe or vault and give such guest a receipt therefor.

But such keeper or owner shall not be required to receive from any one guest for deposit in such safe or vault, property having a market value of more than five hundred dollars."

"*105.3 Nature of liability.* The liability of such keeper or owner for loss of or injury to personal property placed by any guest in his care, *other than that described in sections 105.1 and 105.2*, shall be that of a depository for hire."

"*105.4 Limitation on liability.* In no event shall the liability of such keeper or owner exceed the following amounts:

1. For each trunk and its contents, two hundred fifty dollars.

2. For each valise and its contents, one hundred fifty dollars.

3. For each box, bundle, or package and its contents, fifty dollars.

4. For any and all other miscellaneous effects of each guest, not exceeding one hundred dollars." (emphasis supplied)

It is readily apparent the content of the first unnumbered paragraph (valuables) of § 6525, The Code, 1921, supra, is now found in §§ 105.1 and 105.2, The Code, 1975. The content of the second unnumbered paragraph (baggage) of § 6525, The Code, 1921, supra, is now divided between §§ 105.3 and 105.4, The Code, 1975. But in the process of dividing the second unnumbered paragraph into sections the vital linkage between the concept of "property other than that described in the preceding paragraph" (§ 6525, The Code, 1921) and the dollar limitations now found in § 105.4 was weakened, without any indication the legislature intended to change the law.

■ II. We have said the legislature's intention to change the meaning of a statute by revision must be clear and unmistakable. Compilation and codification by the code editor of general statutes and rules in effect at a certain time are not legislation. *General Mortgage Corporation of Iowa v. Campbell*, 258 Iowa 143, 150, 138 N.W.2d 416, 419–420 (1965).

■ Mere arrangement of sections or parts of a statute, or placing of portions of what was originally a single section in separate sections, as part of a codification or revision, does not change the purpose, operation, and effect thereof unless an intention to do so already appears. *Silver Lake Consolidated School Dist. v. Parker,* 238 Iowa 984, 996–997, 29 N.W.2d 214, 221 (1947); *Jones v. Mills County,* 224 Iowa 1375, 1379–1380, 279 N.W. 96, 99 (1938).

■ If a revised statute is ambiguous or susceptible of two constructions, reference may be had to prior statutes for the purpose of ascertaining intent. *United States v. Kinsley,* 518 F.2d 665, 669 (8th Cir. 1975); *Kelly v. Brewer,* 239 N.W.2d 109, 114 (Iowa 1976).

■ Plaintiff's contention § 105.4 liability limitations apply only to § 105.3 guest property (baggage), as made plain in the second unnumbered paragraph of § 6526, The Code, 1921, is bolstered by the fact that in 1924, the Fortieth Extra General Assembly completely revised the Iowa Code. The bulk of legislation passed by that body, including the disputed statute, was not separately enacted "session laws," but was incorporated directly into the revised Code of Iowa, 1924. The fact of complete revision lends less support to the proposition that a change of meaning was intended by the division of a paragraph than it does to the proposition the change reflected only an editor's concept of word economy or style. When there is no evidence of legislative intent to alter the meaning of a Code section by language changes accomplished in the revision of the Code in 1924, we may examine the prior statute to ascertain the statute's meaning. *Kelly v. Brewer,* supra, 239 N.W.2d at 114–115.

We already have analyzed the statutory meaning of the enactment as it appeared prior to the 1924 Code revision. That statutory scheme indicates the § 105.4 words "in no event" referred only to property other than the precious articles described in § 105.1, and are not words of "absolute overall limitation."

■ III. When we interpret a statute for the first time, we examine both its language and legislative purpose. We consider all its parts together without according undue importance to single or isolated portions. *Osborne v. Edison,* 211 N.W.2d 696, 697 (Iowa 1973). Issues of statutory construction cannot be resolved from isolated words taken out of context. *State v. McEwen,* 250 Iowa 721, 725, 96 N.W.2d 189, 191–192 (1959).

■ We do not presume the legislature intended that words in a statute should be given a redundant and useless meaning. *Hartz v. Truckenmiller,* 228 Iowa 819, 824, 293 N.W. 568, 571 (1940); *Leversee v. Reynolds,* 13 Iowa 310, 311 (1862). We endeavor to construe statutes so that no part is rendered superfluous, and should give effect to every provision of the statute. *Board of Directors v. Blakesley,* 240 Iowa 910, 918, 36 N.W.2d 751, 755 (1949).

The conclusion that § 105.4 does not absolutely limit liability for § 105.1 precious articles follows logically if the language of the two sections is compared.

Section 105.1 limits liability for precious articles (valuables) to $100 when certain conditions are met. Section 105.4 then limits liability to: (1) $250 for each trunk and its contents; (2) $150 for each valise and its contents; (3) $50 for each box, bundle, or package and its contents; and (4) $100 for any and all other miscellaneous effects.

■ If § 105.4 were read as an absolute limitation on liability, an innkeeper would be liable only to the extent of $50 for the loss of jewelry contained in any box. However, if that same jewelry was contained in a trunk, the innkeeper would be liable for up to $100 if the conditions of § 105.1(1), (2), and (3) were met, and up to $250 if they were not. We cannot presume the legislature intended to enact a futile or ineffectual law or one that would lead to absurd consequences. *Lynch v. Bogenrief,* 237 N.W.2d 793, 796 (Iowa 1976); *Graham v. Worthington,* 259 Iowa 845, 854–855, 146 N.W.2d 626, 633 (1966).

We are satisfied the legislature did not intend, by the language now incorporated in § 105.4, to limit an innkeeper's liability for § 105.1 precious articles or valuables. As to that class of guest property, § 105.1 specifies those conditions which must be met by the innkeeper if his or her common-law liability is to be confined to a $100 maximum.

IV. The narrow law question which was before trial court and carried here does not permit us to decide other issues suggested: which party must plead fulfillment of § 105.1 conditions, see *Roger Wurmser, Inc. v. Interstate Hotel Co.*, 148 Neb. 660, 664, 28 N.W.2d 405, 407 (1947), and whether an Iowa innkeeper may be liable for loss of a guest's property on theories of implied contract or negligence. See *Schiffman v. Narragansett Hotel*, 86 R.I. 258, 264–265, 134 A.2d 153, 156 (1957). These questions were not at issue in the hearing below, nor briefed here. Their resolution ultimately may involve, *inter alia*, constitutional doctrines including equal protection in treatment of guests of various kinds. See *de Saric v. Miami Caribe Investments, Inc.*, supra, 512 F.2d at 1016–1017. Nothing we have said in this decision is intended to suggest the solution should these questions arise in the case.

We reverse and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.