# IN THE SUPREME COURT OF IOWA

No. 09–0342

Filed December 23, 2010

**DALARNA FARMS,**

Appellee,

vs.

**ACCESS ENERGY COOP.,**

Appellant.

Appeal from the Iowa District Court for Des Moines County, Mary Ann Brown, Judge.

On discretionary review, we conclude Iowa Code section 657.1(2) provides a potential comparative fault defense in any action for nuisance against an electric utility. **REVERSED AND REMANDED.**

Gregory R. Brown and Joseph G. Gamble of Duncan Green Brown & Langeness, P.C., Des Moines, and Stuart G. Mondschein of Wheeler, Van Sickle & Anderson, S.C., Madison, Wisconsin, for appellant.

Nicholas G. Pothitakis of Pothitakis Law Firm, PC, Burlington, and Scott Lawrence of Lawrence Law Office, S.C., St. Nazianz, Wisconsin, for appellee.

**HECHT, Justice.**

In a nuisance suit brought by a dairy farm against an electric utility, we are asked to interpret Iowa Code section 657.1(2) (2007) to determine the scope and constitutionality of the "electric utility defense."[1] We conclude the potential comparative fault defense provided in section 657.1(2) is available in any nuisance action seeking damages against an electric utility. We reverse and remand to the district court for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

According to the petition filed in this case, New London Dairy constructed and operated a dairy farm in New London, Iowa, from 1999 until 2003. The dairy herd suffered from health problems, eventually driving the farm into bankruptcy. In 2003, Dalarna Farms bought the dairy herd and began managing the dairy. Dalarna also experienced problems with the herd, including low milk production and a high death rate. After some research, Dalarna concluded the herd was being affected by stray voltage originating from the utility system of Access Energy Cooperative.

On March 1, 2007, Dalarna and New London filed suit against Access Energy for nuisance based on the effects of stray voltage on the farm. The district court severed the claims of the two plaintiffs. Dalarna's suit consists of two counts, both based on nuisance theory. The first count seeks money damages for past and present harm caused by stray voltage on the dairy farm, and the second seeks an order to abate and enjoin Access Energy from causing stray voltage on the farm.

---

[1]All citations to the Code of Iowa will be to the 2007 Code unless otherwise indicated.

Access Energy filed a motion styled "Motion for Partial Summary Judgment and/or Motion for Adjudication of Law Point" requesting the application of the Iowa Comparative Fault Act to Dalarna's damages claim. The district court concluded the motion was not properly supported as a motion for summary judgment. Instead, the court concluded, "[t]o the extent that the parties are asking the court to, in advance of trial, advise them as to what it considers to be the controlling law in the state of Iowa, the court will enter this advisory ruling."[2] The district court determined Iowa Code section 657.1(2) authorizes Access Energy to assert a comparative fault defense only against Dalarna's claim for future damages, if any, awarded in lieu of injunctive relief.

We granted Access Energy's application for interlocutory appeal.

## II. Standard of Review.

Whether Access Energy's motion is characterized as a motion for summary judgment or, under the former rule, as a motion for adjudication of law points, our review is for correction of errors at law. Iowa R. App. P. 6.907; *see also Weber v. Warnke*, 658 N.W.2d 90, 92 (Iowa 2003) (recognizing motions for adjudication of law points were reviewed for errors at law); *Fin. Mktg. Servs., Inc. v. Hawkeye Bank & Trust of Des Moines*, 588 N.W.2d 450, 455 (Iowa 1999) (stating summary judgments are reviewed for correction of errors at law).

## III. Discussion.

Access Energy contends the district court erred in interpreting section 657.1(2) to allow the comparative fault defense only against future damages, if any, awarded in lieu of injunctive relief. Simply put,

---

[2]As of August 1, 2002, the Iowa Rules of Civil Procedure no longer recognizes a separate motion for adjudication of law points. *See Weber v. Warnke*, 658 N.W.2d 90, 92–93 (Iowa 2003). Neither party challenges the district court's authority to issue an "advisory ruling."

Access Energy contends the statute permits an electric utility to assert a comparative fault defense against any damages awarded for a nuisance claim. Dalarna disagrees, contending the district court's interpretation of the statute is faithful to the enactment's express limitation of the defense to actions "for abatement" of nuisances. Dalarna further asserts that the interpretation of section 657.1(2) favored by Access Energy would result in an unconstitutional taking and violation of the inalienable rights clause of the Iowa Constitution and posits that the application of comparative fault principles in nuisance actions in which no negligent conduct is asserted against a utility is "difficult, if not unworkable."

**A. Interpretation of Section 657.1(2).** In October 2002, this court issued an opinion in *Martins v. Interstate Power Co.*, 652 N.W.2d 657 (Iowa 2002). The *Martins* case involved a factual scenario similar to this case. The plaintiffs managed a dairy farm affected by stray voltage from an electric utility located nearby. *Martins*, 652 N.W.2d at 658–59. The Martins filed suit against Interstate Power alleging several theories, including strict liability, negligence, and nuisance, eventually dismissing all claims except the one based on nuisance. *Id.* at 659. After a jury verdict in favor of the Martins, Interstate Power appealed on several grounds. *Id.* The court of appeals affirmed the judgment. *Id.* We granted further review to address one issue: "whether the district court erred by applying a 'pure nuisance' claim against the utility without an accompanying negligence claim." *Id.* at 659–60. We held, contrary to law in other jurisdictions, nuisance lawsuits in Iowa need not necessarily be based on negligent conduct. *Id.* at 665. The question of whether a nuisance has been created is primarily a fact question that depends on the " 'reasonableness of conducting the business in the manner, at the

place, and under the circumstances in question.' " *Id.* at 660 (quoting *Weinhold v. Wolff*, 555 N.W.2d 454, 459 (Iowa 1996)). We distinguished between negligent conduct and conditions constituting nuisances and summarized that

> [t]he true distinction between negligence and nuisance is that "to constitute a nuisance 'there must be a degree of danger (likely to result in damage) *inherent* in the thing itself, beyond that arising from mere failure to exercise ordinary care in its use.' "

*Id.* at 661 (quoting *Guzman v. Des Moines Hotel Partners, L.P.*, 489 N.W.2d 7, 11 (Iowa 1992)). Although we concluded stray voltage constituted such a "pure nuisance," we noted that if "a nuisance is based on negligence, however, liability for nuisance may depend upon the existence of negligence" and "apportionment of fault principles under Iowa Code chapter 668 [would] apply." *Id.* After acknowledging authority from other jurisdictions concluding electric utilities are only liable for nuisance if they have been negligent, we noted that those courts relied upon a legislative immunity or modified nuisance principles to reach their decisions. *Id.* at 662–64.

> Unlike South Dakota, Iowa has no statute exempting electric utilities from nuisance claims. The argument here, of course, is that we as a court should not wait for legislative action and should on our own adopt a similar stance in the name of public policy. We decline to do so. Any exception to our nuisance law with respect to electric utilities should come from the legislature and not from this court.

*Id.* at 665.

Less than two years later, the legislature responded to our decision in *Martins* and amended section 657.1, adding subsection 2. The statute provides:

> 1. Whatever is injurious to health, indecent, or unreasonably offensive to the senses, or an obstruction to the free use of property, so as essentially to interfere

unreasonably with the comfortable enjoyment of life or property, is a nuisance, and a civil action by ordinary proceedings may be brought to enjoin and abate the nuisance and to recover damages sustained on account of the nuisance.

2. Notwithstanding subsection 1, *in an action to abate a nuisance against an electric utility,* an electric utility may assert a defense of comparative fault as set out in section 668.3 if the electric utility demonstrates that in the course of providing electric services to its customers that it has complied with engineering and safety standards as adopted by the utilities board of the department of commerce, and if the electric utility has secured all permits and approvals, as required by state law and local ordinances, necessary to perform activities alleged to constitute a nuisance.

Iowa Code § 657.1 (2005) (emphasis added).[3]

Thus, section 657.1, as amended, makes available a defense of comparative fault, as described in section 668.3, to an electric utility if the utility "has complied with [specified] engineering and safety standards" and "has secured all permits and approvals" required by law. The statute makes this defense available "in an action to abate a nuisance" against an electric utility.

The district court noted, and Dalarna urges on appeal, the plain language of the statute suggests the defense is available only against claims for injunctive relief. Although section 657.1(2) expressly references application of the defense in "action[s] to abate a nuisance," the district court did not conclude comparative fault principles could be applied to diminish the scope of injunctive relief. Instead, the court reasoned that in some actions seeking abatement of a nuisance, equitable considerations will not justify the issuance of an injunction. In such cases, the court concluded future damages might be awarded to the

_____

[3]Another proposed version of the bill would have granted broad immunity to any "public utility" from nuisance lawsuits. *See* H.S.B. 278, 80th G.A., 2nd Sess. § 1 (Iowa 2004) (providing "an act taken or property maintained by a public utility . . . in compliance with administrative rules . . . or other legal standards shall not be considered a nuisance").

plaintiff in lieu of an injunction. Under the district court's interpretation of the statute, the defendant electric utility is allowed to present evidence of the plaintiff's fault to diminish any award for such future damages.

Access Energy disagrees, contending comparative fault principles are not well-suited to reduce or diminish injunctive relief. Emphasizing the perceived impracticability of comparing the fault of the parties in the context of a claim for an injunction, Access Energy posits that "[o]ne would not anticipate an injunction being issued to enjoin an activity half the days of the year because a plaintiff was found fifty percent at fault." Because it believes a literal interpretation of the statute is unworkable, the utility company urges this court to conclude the legislature intended the defense to be available in any nuisance action seeking money damages—whether for past or future losses—against an electric utility.

We are not persuaded by the district court's valiant effort to apply the plain language of section 657.1(2). Instead, we conclude the statute is ambiguous, and we will accordingly apply our well-established principles of statutory construction. *See Carolan v. Hill*, 553 N.W.2d 882, 887 (Iowa 1996).

Our goal is to ascertain the legislature's intent, and we will assess "the statute in its entirety, not just isolated words or phrases." *State v. Gonzalez*, 718 N.W.2d 304, 308 (Iowa 2006). We seek to interpret the statute so no part of it is rendered redundant or irrelevant. *Id.* We strive for "a reasonable interpretation that best achieves the statute's purpose and avoids absurd results." *Id.* Legislative intent is ascertained not only from the language used but also from "the statute's 'subject matter, the object sought to be accomplished, the purpose to be served, underlying policies, remedies provided, and the consequences of the various

interpretations.' " *Cox v. State*, 686 N.W.2d 209, 213 (Iowa 2004) (quoting *State v. Albrecht*, 657 N.W.2d 474, 479 (Iowa 2003)).

Our review of section 657.1 convinces us the legislature intended to allow an electric utility to assert a comparative fault defense in any civil action seeking damages for the defendant electric utility's creation or maintenance of a nuisance. The amendment to section 657.1 clearly appears to have been a legislative response to our decision in *Martins*. It is less clear, however, that the legislative response was intended to limit the comparative fault defense to actions seeking injunctive relief. Instead, we think a reading of section 657.1 in its entirety and in proper context demonstrates a legislative intent to authorize a comparative fault defense in any nuisance action seeking damages against an electric utility if the utility demonstrates compliance with the standards and secures the permits and approvals referenced in the statute.

Section 657.1(1) provides "a civil action by ordinary proceedings may be brought to enjoin and abate the nuisance and to recover damages sustained on account of the nuisance." Iowa Code § 657.1(1). This language contemplates a single cause of action with two possible remedies—injunctive relief and damages. We note that before section 657.1 was amended, the title of the statute was "Nuisance – what constitutes – action to abate."[4] *Id.* § 657.1 (2003). We think this demonstrates the legislature used the phrase "action to abate" as a shorthand for "a civil action by ordinary proceedings . . . to enjoin and abate the nuisance and to recover damages sustained on account of the nuisance." *Id.* § 657.1(1); *see State ex rel. Bd. of Pharmacy Exam'rs v. McEwen*, 250 Iowa 721, 725, 96 N.W.2d 189, 191 (1959) ("In construing

---

[4]After the amendment, the title of the statute is now "Nuisance – what constitutes – action to abate – electric utility defense." Iowa Code § 657.1 (2005).

any particular clause or words of a statute, it is especially necessary to examine and consider the whole statute, including the title, and gather, if possible, from the whole the expressed intention of the legislature."). Since the same phrase was used when the legislature added subsection 2, it is reasonable to conclude the legislature was utilizing the same shorthand.

Further, section 657.1(2) provides comparative fault principles, "as set out in section 668.3," apply if the electric utility meets certain requirements. Section 668.3 in turn provides a guide to how comparative fault principles shall be applied to actions to recover damages. Iowa Code § 668.3. Section 668.3(1)(*a*) provides contributory fault may act as a bar to recovery "in an action . . . to recover damages for fault resulting in . . . injury to . . . property." *Id.* § 668.3(1)(*a*). Section 668.3(2) describes how the court shall instruct the jury to allocate fault among the parties and to assess damages. *Id.* § 668.3(2). Section 668.3(3), (4), (5), (6), and (7) prescribes how the court should apply the findings of the jury in determining the award of damages. *Id.* § 668.3(3)–(7). Section 668.3(8) specifically addresses how awards that include both past and future damages should be handled. *Id.* § 668.3(8).

Given these considerations, as well as the recognition of the impracticability of applying a strictly literal reading of section 657.1(2), we conclude the legislature intended to allow an electric utility to assert a comparative fault defense, if certain requirements are met, in any nuisance lawsuit seeking damages against it.

**B. Constitutionality of Section 657.1(2).** Dalarna contends, relying on *Bormann v. Board of Supervisors*, 584 N.W.2d 309 (Iowa 1998) and *Gacke v. Pork Xtra, L.L.C.*, 684 N.W.2d 168 (Iowa 2004), our interpretation of section 657.1(2) would result in an unconstitutional

taking of their valuable property right to relief against a nuisance and a violation of Iowa's inalienable rights clause.

The statute at issue in *Bormann* provided that a farm operated in a designated agricultural area could not be deemed a nuisance unless the farm operated negligently or in violation of law. *Bormann*, 584 N.W.2d at 314. We noted, however, that under Iowa law, a plaintiff would not generally have to establish the defendant acted negligently in order to recover for nuisance.[5] *Id.* at 315. After determining that the maintenance of a nuisance is tantamount to a valuable property right, specifically an easement, we considered whether granting the easement in favor of the defendants without compensation was an unconstitutional taking. *Id.* at 315, 319–21. Noting that a taking " 'may be anything which substantially deprives one of the use and enjoyment of his property or a portion thereof,' " we concluded the statute violated the Fifth Amendment of the United States Constitution and article I, section 18 of the Iowa Constitution. *Id.* at 321 (quoting *Phelps v. Bd. of Supervisors*, 211 N.W.2d 274, 276 (Iowa 1973)).

*Gacke* involved a statute similar to the one in *Bormann. Gacke*, 684 N.W.2d at 172–73. The statute purported to immunize animal feeding operations from nuisance liability unless two conditions were met: (1) the animal feeding lot unreasonably and for substantial periods of time interfered with the plaintiff's use and enjoyment of his or her life or property *and* (2) the animal feeding lot failed to use existing prudent generally accepted management practices reasonable for the operation. *Id.* at 173. We concluded the second condition was analogous to the

---

[5]We noted while a nuisance *may* be caused by the defendant's negligence, underlying negligence is not required for a nuisance recovery. *Bormann*, 584 N.W.2d at 315.

negligence standard deemed unconstitutional in *Bormann.* *Id.* We determined, however, that the statute could be upheld against the takings challenge to the extent the enactment could be interpreted to allow for recovery of the diminution of the value of the plaintiff's property caused by the nuisance because "[t]he standard of compensation required for the taking of an easement is 'the decrease in value of the dominant estate . . . resulting from the taking of the easement.' " *Id.* at 174–75 (quoting 26 Am. Jur. 2d *Eminent Domain* § 385, at 790 (1996)). We concluded the statute did not effect an unconstitutional taking by immunizing the owner of the feed lot from an award for other damages recoverable under a nuisance claim. *Id.* However, we further concluded that, as applied, the immunity statute violated Iowa's inalienable rights clause because it was unduly oppressive and not a reasonable exercise of the state's police power. *Id.* at 179.

Dalarna asserts our interpretation of section 657.1(2) would result in a taking in violation of the Federal and Iowa Constitutions as well as a violation of the Iowa Constitution's inalienable rights clause. We will address each claim in turn.

1. *Does section 657.1(2) effect an unconstitutional taking?* Dalarna contends our interpretation of section 657.1(2) "result[s] in [Access Energy] gaining property rights over [Dalarna's] land without any compensation by grafting a constitutionally irrelevant element— negligence—onto [Dalarna's] claim." We must begin our analysis of this claim by pointing out that Dalarna's argument relies on a fundamental misunderstanding of the implications of our interpretation of section 657.1(2) and the important differences between section 657.1(2) and the statutes at issue in *Bormann* and *Gacke.* We do not interpret section 657.1(2) to require a plaintiff prove negligence as a condition of

entitlement to relief for nuisance. Our interpretation of section 657.1(2) does not alter the elements of a nuisance claim in Iowa. A plaintiff may still prove an electric utility created or maintained a nuisance without establishing negligent conduct on the part of the defendant electric utility.

The question remains, however, whether section 657.1(2) results or could result in an unconstitutional taking of Dalarna's property rights under the Iowa Constitution.[6] At this pretrial stage, it is theoretically possible a jury could return a verdict that would not implicate the takings clause if (1) Dalarna fails to prove the existence of a nuisance, or (2) Dalarna proves Access Energy caused a nuisance but fails to prove damages resulted from it, or (3) Dalarna proves a nuisance and resulting damages, but Access Energy fails to prove any fault of Dalarna contributed to the causation of its damages. It is also theoretically possible that if the statute is applied to the facts established at trial consistent with the interpretation advanced by Access Energy, Dalarna's nuisance damage remedy could be partially reduced or totally eliminated as a consequence of Dalarna's causal fault.

We conclude an unconstitutional taking could result if section 657.1(2) is applied, as Access Energy urges, to reduce all elements of Dalarna's damages by the percentage of fault attributed to Dalarna. First, the jury could find Access Energy caused or maintained a nuisance but also find Dalarna's fault caused some percentage of the

---

[6]Dalarna's challenge to Access Energy's interpretation of section 657.1(2) is based on the Takings Clauses of the Federal and Iowa Constitutions. As we conclude article I, section 18, the takings clause in the Iowa Constitution, is dispositive in this case, we do not address the provisions of the Takings Clause under the Federal Constitution. *See Gacke*, 684 N.W.2d at 174 (concluding that our disposition of the plaintiffs' state constitutional challenge to section 657.11(2) made it unnecessary to decide whether the statute also violated the Federal Takings Clause).

damages. If the jury finds Dalarna's causal fault is less than that of Access Energy, Dalarna's recovery would, under the interpretation of section 657.1(2) urged by Access Energy, be reduced by the percentage of Dalarna's fault. *See* Iowa Code § 668.3(1)(*a*). If the jury determines Dalarna's causal fault exceeds that of Access Energy, Dalarna's recovery would be eliminated entirely if Access Energy's interpretation of the statute is upheld. *See id.*

Generally, when a nuisance is deemed permanent, "the proper measure of damages is the diminution in the market value of the property." *Weinhold*, 555 N.W.2d at 465. "This measure of damages compensates the injured landowner for an interference that is tantamount to a permanent taking." *Id.* Additionally, the plaintiff may also recover special damages to compensate the plaintiff for the " 'deprivation of the comfortable enjoyment of his property, and the inconvenience and discomfort suffered by himself and his family, or other affected persons.' " *Id.* (quoting 58 Am. Jur. 2d *Nuisances* § 296 (1989)). A plaintiff may also recover for " 'injuries to or destruction of buildings and crops resulting from a permanent nuisance.' " *Id.*

Our decision in *Gacke* made clear that a statute purporting to immunize a defendant who creates or maintains a nuisance from liability to another for the value of the diminution of the property caused by the nuisance is unconstitutional. *Gacke*, 684 N.W.2d at 174–75. We concluded, however, that the statute at issue in that case could be upheld to the extent it could be interpreted to apply constitutionally. *Id.* As in *Gacke*, we conclude any constitutional infirmity in section 657.1(2) may be avoided by an interpretation of the statute that does not permit the comparative fault scheme to reduce or eliminate a plaintiff's recovery for the diminution of the value of the property caused by a nuisance. Put

another way, if a nuisance resulting in an easement is established, *Gacke* requires that the plaintiff be compensated for the full value of the easement on his land to avoid an unconstitutional taking. Dalarna's recovery for other elements of damage, if any, caused by any nuisance found by the fact finder to have been caused by Access Energy shall be reduced in proportion to Dalarna's causal fault, if any. *Id.* at 175 ("The Takings Clause does not prohibit limitations on other damages recoverable under a nuisance theory."). When so interpreted and applied, section 657.1(2) can be applied without a taking.

2. *Does section 657.1(2) violate Iowa's inalienable rights clause?* Dalarna also contends the application of section 657.1(2) in the manner advanced by Access Energy would result in a violation of Iowa's inalienable rights clause. *See* Iowa Const. art. I, § 1. We conclude Dalarna's inalienable rights clause argument is premature at this juncture. The analysis under this constitutional provision requires an assessment of whether the statute is a reasonable exercise of the State's police power. *Gacke*, 684 N.W.2d at 177–78. Specifically, the court must determine whether the means chosen by the State to interpose its regulatory authority are " 'reasonably necessary' and not 'unduly oppressive' " on individuals by balancing the public interest in the enforcement of the statute against the burden on the individual. *Id.* at 178 (quoting *Gravert v. Nebergall*, 539 N.W.2d 184, 186 (Iowa 1995)). This balancing of interests is necessarily a fact-specific enterprise. *See id.* at 178–79 (considering the length of time the Gackes resided on their property, the money invested in their property, the extent of the adverse effect of the statute on the Gackes' property, and the extent of any remedy available to the Gackes). Although Dalarna alleges "devastating effects on the dairy operation due to exposure to electric current in the

ground," these allegations have not been proven at this stage of the litigation. In short, we cannot conduct a balancing of the respective interests until, as in *Gacke*, a factual basis for them has been established. At this pretrial stage of the proceeding, we conclude we are unable to adjudicate whether the application of section 657.1(2) in a manner consistent with this opinion would exceed the proper limits of the state's regulatory authority by producing an unduly oppressive result. Accordingly, we decline to address this issue.

**C. Is the Application of Comparative Fault Principles to Nuisance Actions "Workable"?** Dalarna further contends that applying comparative fault principles to a nuisance suit is unworkable. Specifically, Dalarna argues that comparing an electric utility's liability for the creation or maintenance of a nuisance against a dairy farmer's alleged negligence is like comparing apples to oranges. Dalarna requests that we provide specific guidance to the parties and the district court regarding the evidence that should be considered by the jury to assess the fault of the two parties.

While we have a great appreciation for the difficult endeavor undertaken by a fact finder in assessing and allocating different types of fault to parties under section 668.3, we are not persuaded that a fact finder will be less capable of assessing a plaintiff's causal fault in a nuisance case against an electric utility company than in any other case. Nuisance liability in cases not alleging negligent conduct on the part of a defendant has been likened to "strict liability," *see Martins*, 652 N.W.2d at 665, and is arguably a qualitatively different kind of fault than negligence or recklessness. However, section 668.3 already requires juries to compare qualitatively different kinds of fault, including recklessness, negligence, breach of warranty, unreasonable assumption

of risk, misuse of a product, and strict tort liability. *See* Iowa Code § 668.1. We do not think comparing an electric utility's liability for the creation or maintenance of a nuisance with the plaintiff's causal fault, if any, under section 657.1(2) will be any more difficult than comparisons made by juries in other cases under section 668.3.

We are disinclined to attempt, at Dalarna's request, to articulate what potential evidence may be considered on remand by the jury in the comparative fault calculus under section 657.1(2). While we understand Dalarna's interest in avoiding the introduction of irrelevant evidence, we are not inclined to engage in speculation about what evidence might be available to the parties and offered at the trial in this case. As this case comes to us on discretionary review of a ruling on a pre-trial motion, no factual record has been developed. We are confident the district court will capably determine whether evidence proffered at trial is relevant to a jury's determination of the "causal relation between the conduct and the damages claimed." *Id.* § 668.3(3).

## IV. Conclusion.

We conclude section 657.1(2) allows an electric utility to assert a comparative fault defense to a claim for damages caused by nuisance if the utility establishes it has complied with engineering and safety standards adopted by the utilities board of the department of commerce and secured the permits and approvals as provided in the statute. However, we further conclude that to avoid an unconstitutional taking, comparative fault principles may not be applied to reduce a plaintiff's recovery for the diminution in value of his or her property caused by the nuisance. Accordingly, we reverse and remand this case to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

All justices concur except Appel, J., who takes no part.