## City of Georgetown v. Ammerman.

(Decided April 18, 1911.)

Appeal from Scott Circuit Court.

1.  Cities—Boards of Health—Powers and Duties as to Health and Comfort of the People.—A board of health has no power, nor has a city any power to order or to dump garbage or other refuse matter, filth from closets, sinks, cesspools, streets or other

places, or the carcasses of dogs, hogs or other animals, fowls or other noxious and filthy things. so that it will wash into a spring used by the people of a city or town, or that will create a stench to those persons residing in the vicinity thereof.

2. Appeals—Bills of Exceptions—Failing to file in Proper Time—Effect.—On the appeal of a case to the Court of Appeals where the clerk by mistake failed to copy into the record the bill of exceptions when he made out the transcript for the Appellate Court, he cannot thereafter supply the record, after the time for filing it had passed.

B. M. LEE for appellant.

BRADLEY & BRADLEY for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Appellee has owned for several years a house and lot in Payne's addition to Georgetown, Ky., which is worth, according to the testimony, from two to three thousand dollars. Prior to the year 1909 there was an epidemic of typhoid fever in that city, and it seems the board of health attributed it to the fact that the filth from the city was washed into what is known as "The Big Spring" from which the city was supplied with water. This board directed the city to dispose of the filth in some other way, and it purchased about six acres of land in Payne's Addition to the town, on Elkhorn Creek, for a dumping ground for this filth. The six acres adjoined the lot of appellee.

According to appellee's pleadings there was continual dumping on this ground of garbage, refuse matter, filth from closets, sinks, cess-pools, streets and other places, the carcases of dogs, hogs and other animals, dead fowls and other noxious and filthy thing. which made it almost impossible to live in her home to her great damage and to the market value of the property. Appellant denied the truth of these allegations, and pleaded, in effect, that even if they were true, the city was not responsibsle as it in that matter performed a governmental duty in compliance with the direction of the board of health, and that the city was compelled to establish this dumping ground to preserve the health of the city. The court sustained a demurrer to this paragraph of the answer, and it is of this ruling that appellant first complains. According to appellee's pleadings and proof, the city created a nuisance adjacent to her

dwelling. The board of health had no power to author-
ize the city to do such a thing, nor did the city of its own
right have such a power. It amounted to taking ap-
pellee's property; that is, decreasing its value by injur-
ing the use thereof, without first making just compen-
sation to her as provided by the Constitution. No in-
dividual could have done this for his benefit, and we can
see no reason why a collection of people, a city, should be
permitted to take for their benefit, property under like
circumstances, without first making just compensation to
the owner thereof. The court did not err in striking out
this part of the answer.

Appellant also complains of instruction No. 1. Ap-
pellee objects to the consideration of the instructions be-
cause they are not part of the bill of exceptions. This
matter, in short, is as follows: At the conclusion of the
trial the stenographer transcribed his notes of the tes-
timony, and certified same as all the evidence introduced
upon the trial, and it was signed by the judge who tried
the case. There were no objections or exceptions con-
tained in this bill, nor were the instructions incorporated
therein. In fact, no bill of exceptions of any kind was
filed. The instructions, or what purports to be the in-
structions, were copied by the clerk of the court when
he made out his transcript, but no order of court ap-
pears with reference thereto showing which were given
and which were refused, or whether or not appellant ob-
jected to them. Under the opinions of this court, we can
not consider these purported instructions. On February
8, 1911, appellant filed an additional record which con-
sists of the certificate of the stenographer who took the
evidence at the trial who states, in effect, that when he
made the original transcript of the evidence he supposed
there would be a bill of exceptions filed showing all ob-
jections and exceptions to the instructions and the ac-
tion of the court thereon. He also certified the instruc-
tions given and the objections and exceptions of appel-
lant thereto. The judge also attached his signature to
this paper on February 4, 1911. The trial of the case in
the lower court was had about one year prior to that date,
and the time for filing a bill of exceptions had long since
expired. This additional record is not a copy of the
orders of the court which were actually made during and
prior to the trial of the case which the clerk failed by

mistake to copy into the record when he made out the transcript for this court. It only gives a history of what occurred during the progress of the case and what should have been incorporated into a bill of exceptions. This additional record has no effect. The parties lost control of this matter when the time for filing a bill of exceptions expired, therefore, we can not consider these matters.

For these reasons, the judgment of the lower court is affirmed.