Clarence BORMANN and Caroline Bor-
mann, Husband and Wife; Leonard
McGuire and Cecelia McGuire, Husband
and Wife, Appellants,

v.

BOARD OF SUPERVISORS IN AND FOR
KOSSUTH COUNTY, Iowa; and Joe
Rahm, Al Dudding, Laurel Fantz, James
Black, and Donald McGregor, In Their
Capacities as Members of the Board of
Supervisors, Appellees,

Gerald Girres, Joan Girres, Mike Girres,
Norma Jean Thul, Jerald Thilges, Shir-
ley Thilges, Thelma Thilges, Edwin
Thilges, Ralph Reding, Loretta Reding,
Bernard Thilges, Jacob Thilges, John
Goecke, and Patricia Goecke, Interve-
nors–Appellees.

No. 96–2276.

Supreme Court of Iowa.

Sept. 23, 1998.

Michael E. Gabor of Buchanan, Buchanan, Bibler, Buchanan & Handsaker, Algona, for appellants.

David C. Skilling, County Attorney, for appellees.

Eldon L. McAfee of Beving, Swanson & Forrest, Des Moines, for intervenor-appellees.

Christina L. Gault of Iowa Farm Bureau Federation, West Des Moines, for amicus curiae.

LAVORATO, Justice.

In this appeal we are asked to decide whether a statutory immunity from nuisance suits results in a taking of private property for public use without just compensation in violation of federal and Iowa constitutional provisions. We think it does. We therefore reverse a district court ruling holding otherwise and remand. In doing so, we need not reach a second constitutional challenge.

## I. Facts and Proceedings.

The facts are not in dispute. In September 1994, Gerald and Joan Girres applied to the Kossuth County Board of Supervisors for establishment of an "agricultural area" that would include land they owned as well as property owned by Mike Girres, Norma Jean Thul, Gerald Thilges, Shirley Thilges, Thelma Thilges, Edwin Thilges, Ralph Reding, Loretta Reding, Bernard Thilges, Jacob Thilges, John Goecke, and Patricia Goecke (applicants). See Iowa Code § 352.6 (1993). The real property involved consisted of 960 acres. On November 10, 1994, the Board denied the application, making the following findings and conclusions:

a. The Board finds that the policy in favor of agricultural land preservation is not furthered by an Agricultural Area designation in this case as there are no present or foreseeable nonagricultural development pressures in the area for which the designation is requested.

b. The Board also finds that the Agricultural Area designation and the nuisance protections provided therein will have a direct and permanent impact on the existing and long-held private property rights of the adjacent property owners.

c. Thus, the Board concludes that the policy in favor of agricultural land preservation as set forth in Iowa Code chapter 352 is outweighed by the policy in favor of the preservation of private property rights.

d. Accordingly, the Board finds that the adoption of the Agricultural Area designation in this case is inconsistent with the purposes of Iowa Code chapter 352.

Two months later, in January 1995, the applicants tried again with more success.

The Board approved the agricultural area designation by a 3–2 vote—one of which was based on the "flip [of] a nickel." In granting the designation, the Board this time found that the application to create the agricultural area designation "complies with Iowa Code section 352.6 and that the adoption of the proposed agricultural area is consistent with the purposes of Chapter 352."

In April 1995, several neighbors of the new agricultural area filed a writ of certiorari and declaratory judgment action in district court. The defendants were the Board and individual board members Joe Rahm, Al Dudding, Laurel Fantz, James Black, and Donald McGregor (Board).

The plaintiffs, Clarence and Caroline Bormann and Leonard and Cecelia McGuire (neighbors), challenged the Board's action in a number of respects. The neighbors alleged the Board's action violated their constitutionally inalienable right to protect property under the Iowa Constitution, deprived them of property without due process or just compensation under both the federal and Iowa Constitutions, denied them due process under the federal and Iowa Constitutions, ran afoul of res judicata principles, and was "arbitrary and capricious." The applicants intervened.

Based on stipulated facts, memoranda and oral argument, the district court determined that the Board's action was "arbitrary and capricious." Apparently, the determination was based on one Board member voting on the basis of a flipped coin. This was the only ground on which the court ruled for the neighbors. The court rejected all of their other arguments.

Later, the neighbors filed an Iowa Rule of Civil Procedure 179(b) motion asking the court to clarify its ruling. Meanwhile, the Board corrected the "arbitrary and capricious" infirmity to its November 1995 vote. The neighbors then sought, and received, a certification of appeal from this court.

## II. Scope of Review.

The neighbors sued at law and titled their petition as one for writ of certiorari and one for declaratory judgment. In the petition for writ of certiorari, the neighbors asked that a writ of certiorari issue because the Board's decision was "in excess of" the Board's "jurisdiction" and was "contrary to law" and "illegal" because the decision "violates the Fifth Amendment to the United States Constitution, and article I, section 18 of the Iowa Constitution" in that the decision "effects a taking of the [neighbors'] private property for a use that is not public." The petition asked that the decision be annulled and decreed to be void.

In the petition for declaratory relief, the neighbors sought a declaration that the Board's decision violates the "Fifth Amendment to the United States Constitution, the Fourteenth Amendment to the United States Constitution, and article I, section 18 of the Iowa Constitution."

Iowa Rule of Civil Procedure 306 authorizes the district court to issue a writ of certiorari "where an inferior tribunal, *board or officer* exercising judicial functions, is alleged to have exceeded its, or his proper jurisdiction or otherwise acted illegally." (Emphasis added.) Our scope of review is limited to sustaining a board's decision or annulling it in whole or in part. *Grant v. Fritz*, 201 N.W.2d 188, 189 (Iowa 1972). In addition, the fact that the plaintiff has another adequate remedy does not preclude granting the writ. Iowa R. Civ. P. 308.

Thus, here, a petition for a writ of certiorari is appropriate to test the legality of the Board's decision. Our scope of review is limited to sustaining the Board's decision or annulling it in whole or in part. In addition, the fact that the neighbors may have another adequate remedy, like declaratory judgment, does not preclude our granting relief under Rule 306.

Iowa Rule of Civil Procedure 261 (declaratory judgment) authorizes "[c]ourts of record within their respective jurisdiction [to] declare rights, status, and other legal relations whether or not further relief is or could be claimed."

The purpose of a declaratory judgment is to determine rights in advance. *Miehls v. City of Independence*, 249 Iowa 1022, 1030, 88 N.W.2d 50, 55 (1958). The

essential difference between such an action and the usual action is that no actual wrong need have been committed or loss incurred to sustain declaratory judgment relief. *Id.* at 1031, 88 N.W.2d at 55. But there must be no uncertainty that the loss will occur or that the right asserted will be invaded. *Id.* As with a writ of certiorari, the fact that the plaintiff has another adequate remedy does not preclude declaratory judgment relief where it is appropriate. Iowa R. Civ. P. 261.

We think the facts here are sufficient for us to proceed under either remedy. In addition, because the facts are not in dispute, we need not concern ourselves with whether we employ a correction-of-errors-at-law review or a de novo review. Our only question is a legal one.

### III. The Takings Challenge.

**A. The parties' contentions.** The Board's approval of the agricultural area here triggered the provisions of Iowa Code section 352.11(1)(a). More specifically, the approval gave the applicants immunity from nuisance suits. The neighbors contend that the approval with the attendant nuisance immunity results in a taking of private property without the payment of just compensation in violation of federal and state constitutional provisions.

The neighbors concede, as they must, that their challenge to section 352.11(1)(a) is a facial one because the neighbors have presented neither allegations nor proof of nuisance. However, the neighbors strenuously argue that in a facial challenge context courts have developed certain bright line tests that spare them from this heavy burden. Specifically, the neighbors say, these bright line tests provide that a governmental action resulting in the condemnation or the imposition of certain specific property interests constitutes automatic or per se takings.

Here, the neighbors argue further, that the section 352.11(1)(a) immunity provision gives the applicants the right to create or maintain a nuisance over the neighbors' property, in effect creating an easement in favor of the applicants. The creation of the easement, the neighbors conclude, results in an automatic or per se taking under a claim of regulatory taking.

The Board and applicants respond that a per se taking occurs only when there has been a permanent physical invasion of the property or the owner has been denied all economically beneficial or productive use of the property. They insist the record reflects neither has occurred. Thus, they contend, the court must apply a balancing test enunciated in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). They argue that under that balancing test the neighbors lose.

**B. The relevant constitutional and statutory provisions.**

**1. The constitutional provisions.** The Fifth Amendment to the Federal Constitution pertinently provides that " [n]o person shall be ... deprived of life, liberty, or property without due process of law; nor shall private property be taken for public use, without just compensation." The Fourteenth Amendment to the Federal Constitution prohibits a state from "depriving any person of life, liberty, or property without due process of law." The Fourteenth Amendment makes the Fifth Amendment applicable to the states and their political subdivisions. *Chicago B. & Q. R.R. v. City of Chicago*, 166 U.S. 226, 234–35, 17 S.Ct. 581, 584, 41 L.Ed. 979, 983–84 (1897).

Article I, section 9 of the Iowa Constitution pertinently provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." Article I, section 18 of the Iowa Constitution provides:

> **Eminent domain—drainage ditches and levees.** Private property shall not be taken for public use without just compensation first being made, or secured to be made to the owner thereof, as soon as the damages shall be assessed by a jury.

**2. The statutory provisions.** Iowa Code section 352.6 sets forth the procedure for obtaining an agricultural area designation. The application is to the county board of supervisors. Iowa Code § 352.6. This provision also prescribes the conditions under which a county board of supervisors may

designate farmland as an agricultural area. *Id.* An agricultural area includes, among other activities, raising and storing crops, the care and feeding of livestock, the treatment or disposal of wastes resulting from livestock, and the creation of noise, odor, dust, or fumes. Iowa Code § 352.2(6).

Iowa Code section 352.11(1)(a) provides the immunity from nuisance suits:

A farm or farm operation located in an agricultural area shall not be found to be a nuisance regardless of the established date of operation or expansion of the agricultural activities of the farm or farm operation. This paragraph shall apply to a farm operation conducted within an agricultural area for six years following the exclusion of land within an agricultural area other than by withdrawal as provided in section 352.9.

The immunity does not apply to a nuisance resulting from a violation of a federal statute, regulation, state statute, or rule. Iowa Code § 352.11(1)(b). Nor does the immunity apply to a nuisance resulting from the negligent operation of the farm or farm operation. *Id.* Additionally, there is no immunity from suits because of an injury or damage to a person or property caused by the farm or farm operation before the creation of the agricultural area. *Id.* Finally, there is no immunity from suit "for an injury or damage sustained by the person [bringing suit] because of the pollution or change in condition of the waters of a stream, the overflowing of the person's land, or excessive soil erosion into another person's land, unless the injury or damage is caused by an act of God." *Id.*

Iowa Code section 657.1 defines nuisance and provides for civil remedies:

Whatever is injurious to health, indecent, or unreasonably offensive to the senses, or an obstruction to the free use of property, so as essentially to unreasonably interfere with the comfortable enjoyment of life or property, is a nuisance, and a civil action by ordinary proceedings may be brought to enjoin and abate the same and to recover damages sustained on account thereof.

Iowa Code section 657.2 is a laundry list of the conduct or conditions that are deemed to be a nuisance. Those that are relevant to nuisances resulting from farming and farm operations include:

1. The erecting, continuing, or using any building or other place for the exercise of any trade, employment, or manufacture, which, by occasioning noxious exhalations, unreasonably offensive smells, or other annoyances, becomes injurious and dangerous to the health, comfort, or property of individuals or the public.

2. The causing or suffering any offal, filth, or noisome substance to be collected or to remain in any place to the prejudice of others.

. . . .

4. The corrupting or rendering unwholesome or impure the water of any river, stream, or pond, or unlawfully diverting the same from its natural course or state, to the injury or prejudice of others.

Iowa Code § 657.2.

Our cases recognize that the statutory definition of nuisance does not "modify the common-law's application to nuisances." *Weinhold v. Wolff,* 555 N.W.2d 454, 459 (Iowa 1996). Rather, the statutory provisions "are skeletal in form, and [we] look to the common law to fill in the gaps." *Id.*

There are two kinds of nuisances: public and private. We cited the differences between the two in *Guzman v. Des Moines Hotel Partners:*

A public or common nuisance is a species of catchall criminal offenses, consisting of an interference with the rights of a community at large. This may include anything from the obstruction of a highway to a public gaming house or indecent exposures. A private nuisance, on the other hand, is a civil wrong based on a disturbance of rights in land. . . . The essence of a private nuisance is an interference with the use and enjoyment of land. Examples include vibrations, blasting, destruction of crops, flooding, pollution, and disturbance of the comfort of the plaintiff, as by unpleasant odors, smoke, or dust.

489 N.W.2d 7, 10 (Iowa 1992) (citations omitted). We are dealing here with private nuisances.

To fully understand the issues we are about to discuss, we think it would aid our analysis to distinguish between the concepts of "private nuisance" and "trespass." We made this distinction in *Ryan v. City of Emmetsburg:*

> As distinguished from trespass, which is an actionable invasion of interests in the exclusive possession of land, a private nuisance is an actionable invasion of interests in the use and enjoyment of land. Trespass comprehends an actual physical invasion by tangible matter. An invasion which constitutes a nuisance is usually by intangible substances,. such as noises or odors.

232 Iowa 600, 603, 4 N.W.2d 435, 439 (1942).

 In *Ryan,* we also distinguished between the concepts of "nuisance" and "negligence." Negligence is a type of liability-forming conduct, for example, a failure to act reasonably to prevent harm. *Id.* In contrast, nuisance is a liability-producing condition. *Id.* Negligence may or may not accompany a nuisance; negligence, however, is not an essential element of nuisance. *Id.* If the condition constituting the nuisance exists, the person responsible for it is liable for resulting damages to others even though the person acted reasonably to prevent or minimize the deleterious effect of the nuisance. *Id.*

**C. The framework of analysis.** As the neighbors point out, the federal and state constitutional provisions we set out earlier provide the following framework for a "takings" analysis: (1) Is there a constitutionally protected private property interest at stake? (2) Has this private property interest been "taken" by the government for public use? and (3) If the protected property interest has been taken, has just compensation been paid to the owner? The neighbors contend there is a constitutionally protected private right which the Board has taken from them without paying just compensation. That taking, the neighbors contend, results from the Board's approval of the agricultural area triggering the nuisance immunity in section 352.11(1)(a). The Board and the applicants concede the neighbors have received no compensation so we need not concern ourselves

with the third step of the analysis: Has just compensation been paid to the owner?

**1. Is there a constitutionally protected private property interest at stake?**

 **a. Does the immunity provision in section 352.11(1)(a) against nuisance suits create a property right?** Textually, the federal and Iowa Constitutions prohibit the government from taking property for public use without just compensation. Property for just compensation purposes means "the group of rights inhering in the citizens' relation to the physical thing, as the right to possess, use and dispose of it." *United States v. General Motors Corp.,* 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311, 318 (1945). In short, property for just compensation purposes includes "every sort of interest the citizen may possess." *Id.; see also Liddick v. Council Bluffs,* 232 Iowa 197, 221–22, 5 N.W.2d 361, 374 (1942) ("[P]roperty is not alone the corporeal thing, but consists also in certain rights therein created and sanctioned by law, of which, with respect to land, the principal ones are the rights of use and enjoyment. . . .").

 State law determines what constitutes a property right. *Webb's Fabulous Pharmacies, Inc. v. Beckwith,* 449 U.S. 155, 161, 101 S.Ct. 446, 451, 66 L.Ed.2d 358, 362 (1980). Thus, in this case, Iowa law defines what is property.

 The property interest at stake here is that of an easement, which is an interest in land. Over one hundred years ago, this court held that the right to maintain a nuisance is an easement. *Churchill v. Burlington Water Co.,* 94 Iowa 89, 93, 62 N.W. 646, 647 (1895). *Churchill* defines an easement as

> a privilege without profit, which the owner of one neighboring tenement [has] of another, existing in respect of their several tenements, by which the servient owner is obliged to suffer, or not do something on his own land, for the advantage of the dominant owner.

*Id.*

*Churchill's* holding that the right to maintain a nuisance is an easement and its defini-

tion of an easement are consistent with the Restatement of Property:

> An easement is an interest in land which entitles the owner of the easement to *use* or enjoy land in the possession of another. . . . It may entitle him to do acts which he would otherwise not be privileged to do, or it may merely entitle him to prevent the owner of the land subject to the easement from doing acts which he would otherwise be privileged to do. An easement which entitles the owner to do acts which, were it not for the easement, he would not be privileged to do, is an affirmative easement. . . . [The easement] may entitle [its] owner to do acts on his own land which, were it not for the easement, would constitute a nuisance.

Restatement of Property § 451 cmt. a, at 2911–12 (1944) (emphasis added).

▮ Another feature of easements is that easements run with the land:

> The land which is entitled to the easement or service is called a dominant tenement, and the land which is burdened with the servitude is called the servient tenement. Neither easements [n]or servitudes are personal, but they are accessory to, and run with, the land. The first with the dominant tenement, and the second with the servient tenement.

*Dawson v. McKinnon*, 226 Iowa 756, 767, 285 N.W. 258, 263 (1939).

▮ Thus, the nuisance immunity provision in section 352.11(1)(a) creates an easement in the property affected by the nuisance (the servient tenement) in favor of the applicants' land (the dominant tenement). This is because the immunity allows the applicants to do acts on their own land which, were it not for the easement, would constitute a nuisance. For example, in their farming operations the applicants would be allowed to generate "offensive smells" on their property which without the easement would permit affected property owners to sue the applicants for nuisances. *See* Iowa Code § 352.2(6); *see also Buchanan v. Simplot Feeders Ltd. Partnership*, 134 Wash.2d 673, 952 P.2d 610, 615 (1998) (holding that Washington's Right–to–Farm Act gives farm quasi easement, against urban developments that

subsequently locate next to farm, to continue nuisance activities) (dictum).

▮ **b. Is an easement a protected property right subject to the requirements of the just compensation clauses of the federal and Iowa Constitutions?** Easements are property interests subject to the just compensation requirements of the Fifth Amendment to the Federal Constitution. *United States v. Welch*, 217 U.S. 333, 339, 30 S.Ct. 527, 527, 54 L.Ed. 787, 788 (1910). Easements are also property interests subject to the just compensation requirements of our own Constitution. *Simkins v. City of Davenport*, 232 N.W.2d 561, 566 (Iowa 1975).

**c. Has the easement resulted in a taking?**

▮ **(1) Takings jurisprudence, generally.** There are two categories of state action that *must* be compensated without any further inquiry into additional factors, such as the economic impact of the governmental conduct on the landowner or whether the regulation substantially advances a legitimate state interest. The two categories include regulations that (1) involve a permanent physical invasion of the property or (2) deny the owner all economically beneficial or productive use of the land. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). These two categories are what the neighbors term "per se" takings. The per se rule regarding the first category—physical invasion—was firmly established in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 425, 102 S.Ct. 3164, 3171, 73 L.Ed.2d 868, 886 (1982).

▮ Presumably, in all other cases involving "regulatory takings" challenges, the United States Supreme Court engages in a case-by-case examination in determining at which point the exercise of the police power becomes a taking. *Id.* This ad hoc approach calls for a balancing test that is essentially one of reasonableness. The test focuses on three factors: (1) the economic impact of the regulation on the claimant's property; (2) the regulation's interference with investment-backed expectations; and (3) the character of

the governmental action. *Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d·631, 648 (1978). According to some commentators, a court must first find that the regulation substantially advances legitimate state interests before the court may test the regulation against the three factors in *Penn Central. See, e.g.,* Craig A. Peterson, *Land Use Regulatory "Takings" Revisited: The New Supreme Court Approaches,* 39 Hastings L.J. 335, 351 (1988).

(2) **Physical invasion.** The Board and applicants contend the neighbors' argument fails under both categories of per se takings: physical invasion and denial of all economically beneficial or productive use of the property. The neighbors do not contend the record supports a finding that the challenged statute denies them all economically beneficial or productive use of their property. Accordingly, we restrict our discussion to the physical invasion category.

According to one commentator,

[t]he term "regulatory taking" refers to situations in which the government exercises its "police powers" to restrict the use of land or other forms of property. This is often accomplished through implementation of land use planning, zoning and building codes. In contrast, a governmental entity exercises its eminent domain power or acts in an "enterprise capacity, where it takes unto itself private resources and uses them for the common good." Where the private landowner will not sell the land, the government entity seeks condemnation of the property and pays a fair purchase price to be determined in court. On the other hand, an inverse condemnation claim is sought by a landowner when the government fails to seek a condemnation action in court.

John W. Shonkwiler & Terry Morgan, *Land Use Litigation* § 1.02, at 6 (1986) [hereinafter Shonkwiler]. The neighbors' challenge here is one of inverse condemnation.

We think it would aid our analysis of the neighbors' takings argument to discuss those cases where a government entity acting in its enterprise capacity has appropriated private property without first exercising its eminent domain power.

■■■ (a) **Trespassory invasions of private property by government enterprise.** Generally, when the government has physically invaded property in carrying out a public project and has not compensated the landowner, the United States Supreme Court will find that a per se taking has occurred. *See* Shonkwiler § 10.01(1), at 369. For example, in *Pumpelly v. Green Bay & Mississippi Canal Co.,* the Court held there was a taking where the defendant's construction of a dam, pursuant to state authority, permanently flooded the plaintiff's property. 13 Wall. 166, 80 U.S. 166, 181, 20 L.Ed. 557, 561 (1871). In so holding, the Court enunciated the following rule:

[W]here real estate is actually invaded by superinduced additions of water, earth, sand, or other material, or by having any artificial structure placed on it, so as to effectually destroy or impair its usefulness, it is a taking, within the meaning of the constitution.

*Id.*

In a more recent case, the Court applied the same rule to a state law that authorized third parties to physically intrude upon private property. *Loretto,* 458 U.S. at 432 n. 9, 102 S.Ct. at 3174 n. 9, 73 L.Ed.2d at 880 n. 9 (holding that a New York statute requiring the owners of apartment buildings to permit cable television operators to install transmission facilities on their property was in violation of the Just Compensation Clause).

■■■ (b) **Nontrespassory invasions of private property by government enterprise.** To constitute a per se taking, the government need not physically invade the surface of the land. *See* Shonkwiler § 10.02(2), at 370. For example, in *United States v. Causby,* the Court held that the frequent and regular flights of government planes over the plaintiffs' land had created an easement in the lands for the benefit of the government. 328 U.S. 256, 266–67, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206, 1213 (1946). The plaintiffs owned a small chicken farm near an airport leased by the government for use by army and navy aircraft. The glide path of one of

the runways passed right over the plaintiffs' land at a height of only eighty-three feet. As a result of the aircraft's noise, the plaintiffs had to abandon their commercial chicken operation. *Id.*

The Court held that the flights' interference with the use of the plaintiffs' land constituted a taking of a flight easement that had to be compensated on the basis of diminution in the land's value resulting from the easement. *Id.* at 261–62, 66 S.Ct. at 1066, 90 L.Ed. at 1210. In the course of its opinion, the Court stated:

> [T]he flight of airplanes, which skim the surface but do not touch it, is as much an appropriation of the use of the land as a more conventional entry upon it.... The reason is that there [is] an intrusion so immediate and direct as to subtract from the owner's full enjoyment of the property and to limit his exploitation of it.... The superadjacent airspace at this low altitude is so close to the land that continuous invasions of it affect the use of the surface of the land itself. We think the landowner, as an incident to his ownership, has a claim to it and invasions of it are in the same category as invasions of the surface.... Flights over private land are not a taking, unless they are so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land. We need not speculate on that phase of the present case. For the findings of the Court of Claims plainly establish that there was . a diminution in value of the property and that the frequent, low-level flights were the direct and immediate cause. We agree with the Court of Claims that a servitude has been imposed upon the land.

*Id.* at 265–67, 66 S.Ct. at 1067–68, 90 L.Ed. at 1212–13; *accord Griggs v. Allegheny County*, 369 U.S. 84, 89, 82 S.Ct. 531, 533–34, 7 L.Ed.2d 585, 588–89 (1962); *see also Portsmouth Harbor Land & Hotel Co. v. United States*, 260 U.S. 327, 43 S.Ct. 135, 67 L.Ed. 287 (1922) (holding that firing, and imminent threat of firing, of navy coastal guns over plaintiff's property imposed a "servitude" upon the plaintiff's land and thus amounted to a taking of some interest for public use);

*Dolezal v. City of Cedar Rapids*, 209 N.W.2d 84, 87 (Iowa 1973) (recognizing a navigation easement as one that permits free flights over land including those so low and so frequent as to amount to a taking of property); 2A Philip Nichols, *Eminent Domain* § 6.06, at 6–92 (3d rev. ed. 1998) ("Physical invasions of property are not limited to human or even vehicular entry. To the contrary, the majority of cases involve the transmission of smoke, dust, earth, water, sewage or some other agent onto the impacted property. Regardless of the agent, the result of the invasion may be diminution in values of the property, partial or complete (and permanent and temporary) appropriation, or complete destruction.") [hereinafter Nichols].

In *Fitzgarrald v. City of Iowa City*, 492 N.W.2d 659, 663 (Iowa 1992), we had occasion to consider a physical invasion claim involving overflying aircraft. As in *Causby*, the plaintiffs in *Fitzgarrald* claimed the overflying aircraft so adversely affected the use and enjoyment of their property that a taking had resulted. We rejected the claim because the plaintiffs had failed to prove a "measurable decrease in market value" due to the overflying aircraft. *Id.* at 665. Nevertheless, we cited *Causby* for the proposition that "[i]n some circumstances, overflying aircraft may amount to a physical invasion." *Id.* We recognized that when interferences with property from overflying aircraft result in a measurable decrease in property market value, a taking has occurred. *Id.* at 663. In such cases, we said "the right to recovery is not for the nuisance that must be endured but for the loss of value that has resulted." *Id.* The loss-in-value measure of damages is what we would ordinarily use in eminent domain cases. *Id.* As mentioned, *Causby* used this same measure of damages.

The United States Supreme Court has allowed compensation for other kinds of interferences short of physical taking or touching of land. *See* William B. Stoebuck, *Condemnation by Nuisance: The Airport Cases in Retrospect and Prospect*, 71 Dick. L.Rev. 207, 220–21 (1967) [hereinafter Stoebuck]. For example, in *United States v. Welch*, the plaintiff had a passage easement over a neighbor's property. 217 U.S. 333, 339, 30

S.Ct. 527, 527, 54 L.Ed. 787, 789–90 (1910). The passage was the plaintiff's only access to a county road. The government flooded the neighbor's property thereby cutting off the plaintiff's only access to the road. The Court held the plaintiff was entitled to compensation for the easement. *Id.* at 339, 30 S.Ct. at 527, 54 L.Ed. at 789–90. Because the benefitted land—plaintiff's property—was not physically touched, this case is "a clear example of condemnation without any physical taking." Stoebuck, at 221; *see Nollan v. California Coastal Comm'n*, 483 U.S. 825, 831, 107 S.Ct. 3141, 3143, 97 L.Ed.2d 677, 687 (1987) (holding that requiring property owner to give easement of access across his property to obtain a building permit was a physical taking of private property that required compensation).

In *Pennsylvania Coal Co. v. Mahon*, a state statute prohibited coal mining if it were done in a manner to cause subsidence of any dwelling. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). The plaintiff had a contract to mine coal under a dwelling but the statute prevented the plaintiff from doing so. *Id.* The Court held the statute was an attempt to condemn property—the right to mine coal—without compensation. *Id.* at 414, 43 S.Ct. at 159–60, 67 L.Ed. at 326. *Mahon* "is a situation in which, by denying an owner the occupancy and use of his property interest, the government takes the interest without any semblance of physical intrusion." Stoebuck, at 221.

*Richards v. Washington Terminal Co.* presents a factual scenario closer to the facts in this case. 233 U.S. 546, 34 S.Ct. 654, 58 L.Ed. 1088 (1914). In *Richards*, the plaintiff owned residential property along the tracks of a railroad that had the power of eminent domain. The property lay near the mouth of a tunnel. The Court recognized that two kinds of the railroad's activities had partially destroyed the plaintiff's interest in the enjoyment of his property. The first kind involved smoke, dust, cinders, and vibrations invading the plaintiff's property at all points at which the property abutted the tracks. The second kind involved gases and smoke emitted from engines in the tunnel that contaminated the

air and invaded the plaintiff's property. A fanning system inside the tunnel forced the emission of the gases and smoke from the tunnel. As to the first activity, the Court denied compensation because it was the kind of harm normally incident to railroading operations. *Id.* at 554–55, 34 S.Ct. at 657–58, 58 L.Ed. at 1091–92. As to the second activity—gases and smoke from the tunnel—the Court concluded the plaintiff was entitled to compensation for the "special and peculiar damage" resulting in diminution of the value of the plaintiff's property. *Id.* at 557, 34 S.Ct. at 658, 58 L.Ed. at 1093.

*Richards* is viewed as recognizing the taking of a property interest or right "to be free from 'special and peculiar' governmental interference with enjoyment." Stoebuck, at 220. The taking involved "no kind of physical taking or touching—none whatever." *Id.* Viewed in this light, *Richards* "entirely does away with the requirement of a physical taking or touching." *Id.; see* Nichols § 6.01, at 6–9 n. 11 ("It is not necessary, in order to render a statute obnoxious to the restraint of the Constitution, that it must in terms or in effect authorize an actual physical taking of the property or thing itself, so long as it affects its free use and enjoyment. . . . ").

**(c) Liability of government for a taking by the operation of a nuisance-producing governmental enterprise.** With regard to private nuisances,

> [t]he power of the legislature to control and regulate nuisances is not without restriction, and it must be exercised within constitutional limitations. The power cannot be exercised arbitrarily, or oppressively, or unreasonably. . . . It has been broadly stated, as an additional limitation to the power of the legislature, that . . . the legislature may not authorize the use of property in such a manner as unreasonably and arbitrarily to infringe on the rights of others, as by the creation of a nuisance. So it has been held that the legislature has no power to authorize the maintenance of a nuisance injurious to private property without due compensation.

66 C.J.S. *Nuisances* § 7, at 738 (1950).

Thus, the state cannot regulate property so as to insulate the users from

potential private nuisance claims without providing just compensation to persons injured by the nuisance. The Supreme Court firmly established this principle in *Richards*, holding that "while the legislature may legalize what otherwise would be a public nuisance, it may not confer immunity from action for a private nuisance of such a character as to amount in effect to a taking." *Richards*, 233 U.S. at 553, 34 S.Ct. at 657, 58 L.Ed. at 1091; *see also Pennsylvania R.R. v. Angel*, 41 N.J. Eq. 316, 7 A. 432, 433 (1886) ("[A]n act of the legislature cannot confer upon individuals or private corporations, acting primarily for their own profit, although for public benefit as well, any right to deprive persons of the ordinary enjoyment of their property, except upon condition that just compensation be first made to the owners.").

A number of state courts have decided takings cases on the basis that the government entity operated a nuisance-producing enterprise. *See, e.g., Thornburg v. Port of Portland*, 233 Or. 178, 376 P.2d 100, 106 (1962) ("[A] taking occurs whenever government acts in such a way as substantially to deprive an owner of the useful possession of that which he owns, either by repeated trespasses or by repeated nontrespassory invasions called 'nuisance.'"). Significantly, a large number of these cases deal with smoke and odors from sewage disposal plants and city dumps. One commentator describes the cases this way:

> Typically, a city sewage plant or dump in the vicinity of, but not necessarily directly adjacent to, the plaintiff's land has wafted its noxious smoke, odors, dust, or ashes, usually combinations of these, over the plaintiff's land, with the obvious result of lessening its enjoyment. No physical touching is present, nor do the courts try to equate the municipal acts with touchings. [Several states] have allowed eminent domain compensation in cases of this kind.... More significant than a court's language is the result it announces, and in this respect all the decisions stand for the proposition that nuisance-type activities are a taking....

Stoebuck, at 226–27; *see also* Nichols § 6.07, at 6–112 to 6–113 ("[G]eneration of offensive odors, gases, smoke ... may constitute a taking.").

The commentator ascribes a name to the theory of these cases: condemnation by nuisance. Stoebuck, at 226. And the commentator has formulated the theory this way: "governmental activity by an entity having the power of eminent domain, which activity constitutes a nuisance according to the law of torts, is a taking of property for public use, even though such activity may be authorized by legislation." *Id.* at 208–09; *see also City of Georgetown v. Ammerman*, 143 Ky. 209, 136 S.W. 202, 202 (1911) (holding that odors from city dump adjacent to plaintiff's property created a nuisance that was a taking of the property); *Ivester v. City of Winston–Salem*, 215 N.C. 1, 1 S.E.2d 88, 88–90 (1939) (holding as part of fundamental law of North Carolina that odors from disposal plant next to plaintiff's property constituted a nuisance and were a taking; North Carolina has no constitutional provision for a "taking"); *Brewster v. City of Forney*, 223 S.W. 175, 178 (Tex. Com.Ct.App.1920) (holding under Texas Constitution that odors from a nearby sewage disposal plant resulted in a taking of plaintiff's property); Nichols § 6.07, at 6–112 (stating under broad view of property—right to use, exclude, and dispose—there need not be a physical taking of the property or even dispossession; any substantial interference with the elemental rights growing out of property ownership is considered a taking).

One court long ago anticipated the so-called condemnation by nuisance theory this way:

> Whether you flood the farmer's fields so that they cannot be cultivated, or pollute the bleacher's stream so that his fabrics are stained, or fill one's dwelling with smells and noise so that it cannot be occupied in comfort, you equally take away the owner's property. In neither instance has the owner any less of material things than he had before, but in each case the utility of his property has been impaired by a direct invasion of the bounds of his private dominion. This is the taking of his property in a constitutional sense.

*Pennsylvania R.R. v. Angel*, 7 A. at 433–34.

Our own definition of a taking is in accord with this concept:

[A] "taking" does not necessarily mean the appropriation of the fee. It may be anything which substantially deprives one of the use and enjoyment of his property or a portion thereof.

*Phelps v. Board of Supervisors of County of Muscatine*, 211 N.W.2d 274, 276 (Iowa 1973) (holding that construction of a bridge and causeway over river in such a manner as to allegedly cause greater flooding on adjacent property than previously was a "taking" within the meaning of the Iowa Constitution).

■■■ As mentioned, the Board's approval of the applicants' application for an agricultural area triggered the provisions of section 352.11(1)(a). The approval gave the applicants immunity from nuisance suits. (Significantly, section 352.2(6) allows an agricultural area to include activities such as the creation of noise, odor, dust, or fumes.) This immunity resulted in the Board's taking of easements in the neighbors' properties for the benefit of the applicants. The easements entitle the applicants to do acts on their property, which, were it not for the easement, would constitute a nuisance. This amounts to a taking of private property for public use without the payment of just compensation in violation of the Fifth Amendment to the Federal Constitution. This also amounts to a taking of private property for public use in violation of article I, section 18 of the Iowa Constitution.

■■■ In enacting section 352.11(1)(a), the legislature has exceeded its authority. It has exceeded its authority by authorizing the use of property in such a way as to infringe on the rights of others by allowing the creation of a nuisance without the payment of just compensation. The authorization is in violation of the Fifth Amendment to the Federal Constitution and article I, section 18 of the Iowa Constitution.

The district court erred in concluding otherwise.

**D. The remedy.** In *Agins v. Tiburon*, the California Supreme Court held that when legislation results in a taking, the landowner's remedy is to seek a declaratory judgment action that the legislation is invalid because it makes no provision for payment of just compensation. 157 Cal.Rptr. 372, 598 P.2d 25, 28 (Cal.1979); *see* 1 Nichols, *Eminent Domain* § 1.42(1), at 1–157 (3d rev. ed.1997). The court, however, refused for policy reasons to allow the landowner to sue in inverse condemnation for temporary takings damages. Temporary takings damages represent the damages the landowner suffers up to the time the court declares a statute invalid because it violates constitutional provisions for payment of just compensation. This was the holding in *Agins* under both the federal and state just compensation clauses. *Id.; see* 26 Am.Jur.2d *Eminent Domain* § 137 (1996) ("The constitutional requirement of just compensation may not be evaded or impaired by any form of legislation, and statutes which conflict with the right to just compensation will generally be declared invalid.").

Later, the United States Supreme Court had occasion to review the California rule in *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California*, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). The Court held that invalidation of the offending legislation without compensation for the taking is a constitutionally insufficient remedy for a taking under the Federal Just Compensation Clause. In addition to invalidation, the landowner is entitled to takings damages (temporary taking) that occurred before the ultimate invalidation of the challenged legislation. *Id.* at 319–21, 107 S.Ct. at 2388–89, 96 L.Ed.2d at 266–68.

Here the neighbors seek no compensation. Rather, they seek only invalidation of that portion of section 352.11(1)(a) that provides immunity against nuisance suits. We therefore need not concern ourselves with damages for any temporary taking. Accordingly, we hold unconstitutional and invalidate that portion of section 352.11(1)(a) that provides for immunity against nuisance suits. We reach this result under the Fifth Amendment to the Federal Constitution and also under article I, section 18 of the Iowa Constitution.

We reverse and remand for an order declaring that portion of Iowa Code section 352.11(1)(a) that provides for immunity

against nuisances unconstitutional and without any force or effect.

We reach this holding with a full recognition of the deference we owe to the General Assembly. That branch of government—with some participation by the executive branch—holds the responsibility to sort through the practical realities and, through the political process, reach consensus in highly controversial public decisions. Those decisions demand our sincere respect. The rule is therefore that "[a] challenger must show beyond a reasonable doubt that the statute violates the constitution and must negate every reasonable basis that might support the statute." *Johnston v. Veterans' Plaza Authority*, 535 N.W.2d 131, 132 (Iowa 1995). The rule finding constitutionality in close cases cannot control the present one, however, because, with all respect, this is not a close case. When all the varnish is removed, the challenged statutory scheme amounts to a commandeering of valuable property rights without compensating the owners, and sacrificing those rights for the economic advantage of a few. In short, it appropriates valuable private property interests and awards them to strangers.

The same public that constituted the other branches of state government to make political decisions with an eye on economic consequences expects the court to resolve constitutional challenges on a purely legal basis. We recognize that political and economic fallout from our holding will be substantial. But we are convinced our responsibility is clear because the challenged scheme is plainly—we think flagrantly—unconstitutional.

**REVERSED AND REMANDED.**

All justices concur except LARSON and ANDREASEN, JJ., who take no part.