JEWISH HOSPITAL HEALTHCARE SERVICES, INC., Appellant,

v.

LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT, Appellee.

No. 2008–CA–000095–MR.

Court of Appeals of Kentucky.

Nov. 14, 2008.

Douglas C. Ballantine, Justin D. Clark, Louisville, KY, for appellant.

I.G. Spencer, Jr., B. Frank Radmacher, III, Louisville, KY, for appellee.

Before LAMBERT and NICKELL, Judges; HENRY,[1] Senior Judge.

## OPINION

LAMBERT, Judge.

Jewish Hospital appeals from the dismissal of its claims against Louisville/Jefferson County Metro Government, wherein the Jefferson Circuit Court found Louisville/Jefferson County Metro Government was entitled to sovereign immunity. After careful review, we affirm in part and vacate and remand in part.

Louisville/Jefferson County Metro Government (hereinafter "Metro Government"), as well as the Commonwealth, have entered into a contract known as the Quality and Charity Care Trust (hereinafter "QCCT"), under the provisions of which indigent residents of Jefferson County, including inmates of Metro Corrections, receive medical care at the University of Louisville Hospital (hereinafter "University Hospital"). Additionally, a diversion plan has been put into operation by the Louisville area hospitals, without consultation with Metro Government, which permits any hospital to deem itself to have insufficient facilities available and subsequently to divert incoming patients to other hospitals in the area. This case involves the interaction of this diversion plan with the QCCT.

From time to time when Metro Government sent inmates to University Hospital, which had been paid by the QCCT, University Hospital diverted the inmates to Jewish Hospital without Metro Government's consent. Metro Government has refused to pay Jewish Hospital for services rendered; arguing that to do so would be the equivalent to paying double since it already paid for services via the QCCT. Jewish Hospital filed suit against Metro Government seeking a declaration that Metro Government may not refuse to reimburse Jewish Hospital for medical care it provides to indigent inmates and to recover the costs, approximately $300,000.00, associated with providing medical care to indigent inmates in Metro Government's custody.

Following limited discovery and extensive briefing on the issues, the Jefferson Circuit Court granted summary judgment to Jewish Hospital, ruling that Metro Government was liable for the costs of medical care provided to indigent prisoners. Metro Government, pursuant to Kentucky Rules of Civil Procedure (CR) 59, moved the Jefferson Circuit Court to vacate, alter, or amend its order granting summary judgment. Metro Government simultaneously moved the court to dismiss all claims being made against it by Jewish Hospital on the grounds that they were entitled to sovereign immunity. The court granted both of Metro Government's mo-

---

1. Senior Judge Michael L. Henry, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

tions and dismissed Jewish Hospital's claims. This appeal followed.

Jewish Hospital first argues that Metro Government is not entitled to sovereign immunity because the General Assembly allegedly waived the immunity by requiring county jails to pay for necessary medical care of indigent prisoners under KRS 441.045(3). We find this argument without merit.

■■■ "Immunity from suit is a sovereign right of the state." *Foley Construction Company v. Ward,* 375 S.W.2d 392, 393 (Ky.1963). "The General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth." Kentucky Constitution, Section 231. A county "is a political subdivision of the Commonwealth as well, and as such is an arm of the state government. It, too, is clothed with the same sovereign immunity." *Cullinan v. Jefferson County,* 418 S.W.2d 407, 408 (Ky. 1967), *overruled on other grounds by Yanero v. Davis,* 65 S.W.3d 510, 527 (Ky. 2001). Therefore, absent an explicit statutory waiver, Metro Government is entitled to sovereign immunity. The only question remaining is whether there was an explicit waiver of its sovereign immunity by the General Assembly's enactment of KRS 441.045(3).

■■■ In *Withers v. University of Kentucky,* 939 S.W.2d 340 (Ky.1997), a patient argued that legislative authority to purchase medical insurance constituted a waiver of a state hospital's sovereign immunity. The Kentucky Supreme Court, however, held that the General Assembly made clear its intention to only narrowly and explicitly waive governmental sovereign immunity. We must agree with the logic in *Withers* and now reiterate its holding that "[w]e will find waiver only where stated 'by the *most express language* or by such *overwhelming implications* from the

text as [will] leave no room for any other reasonable construction.'" *See id., quoting Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464–65, 53 L.Ed. 742 (1909)(emphasis added). The only condition expressly created by KRS 441.045 is Metro Government's responsibility to pay for necessary medical care of indigent inmates, which it has provided for by its in-house care facilities and the QCCT. As there is no such express language in KRS 441.045 creating a waiver of immunity on all financial claims against the Metro Government for medical care of inmates, we do not find that sovereign immunity was waived in this case, and thus the trial court did not err in its dismissal on those grounds. In light of Metro Government's sovereign immunity, we additionally find that Jewish Hospital's claims of unjust enrichment must fail as a matter of law.

■■■ Jewish Hospital next argues that Metro Government's refusal to reimburse them is a violation of the takings clause of the Fifth Amendment. Although Jewish Hospital is correct in asserting that intent is not necessary to find a taking, it is a factor to consider. The United States Supreme Court stated clearly that:

this Court has generally "been unable to develop any 'set formula' for determining when 'justice and fairness' require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons." Rather, it has examined the "taking" question by engaging in essentially ad hoc, factual inquiries that have identified several factors-such as the economic impact of the regulation, its interference with reasonable investment backed expectations, and *the character of the governmental action*-that have particular significance.

*See Kaiser Aetna v. US,* 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979), *quoting Penn Central Transportation Co. v. City of New York,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978)(emphasis added). In this case, we find that the character of Metro Government's actions does not rise to a taking.

First, it entered into a contract with a state hospital, which has been recognized by our courts as the most economical way for the state to provide necessary medical care to indigent inmates. *See* KRS 441.047; *see also Osborne v. Commonwealth,* 185 S.W.3d 645, 650 (Ky.2006)(discussing the legislative intent of KRS 441.047 to encourage state facilities in providing psychological medical care as a means of saving taxpayer money). Secondly, it was trying to fulfill the contract, but the decision of where the inmates would be treated was taken away from it. This is where this case and the cases cited by Jewish Hospital in support of finding a taking are distinguishable. This was not a conscious or repeated decision on the part of Metro Government that resulted in an unintentional result as seen in *Dept. of Highways v. Watson,* 446 S.W.2d 294 (Ky. 1969)(where the intentional construction of a highway caused the unintentional flooding of personal property) or *City of Georgetown v. Ammerman,* 143 Ky. 209, 136 S.W. 202 (1911) (where the intentional dumping of trash on property it owned had the unintentional result of causing such a stench that personal property became uninhabitable). This was an intentional decision made not by Metro Government but by University Hospital and Jewish Hospital that caused the unintentional result of Jewish Hospital providing services which were already contracted for by the QCCT. Therefore, we do not find that the character of this involuntary action by Metro Government rises to the level of a taking under the Fifth Amendment.

In like fashion, we do not find that Metro Government's actions would rise to the level of reverse condemnation as Jewish Hospital would have us believe. Moreover, the "property" in question here is services. Jewish Hospital would have us believe that the services in this case are analogous to liens which were still in place on real property acquired by the state through a defaulted contract. *See Armstrong v. United States,* 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). However, the facts are again distinguishable in that the liens were attached to real property. There is no real or even personal property at issue here to which the costs of services attach. Therefore, we again find no error with the court's decision.

■ Jewish Hospital next asserts that it was improper for the trial court to dismiss its motion for declaratory judgment against Metro Government because sovereign immunity does not apply to declaratory judgment actions. It is true that the Kentucky Supreme Court has held that governmental bodies and their officials do not enjoy sovereign immunity from declaratory judgment actions concerning the constitutionality of their actions. *See, e.g., Rose v. Council for Better Education, Inc.,* 790 S.W.2d 186 (Ky.1989); *Jones v. Bd. of Trustees of Kentucky Retirement Systems,* 910 S.W.2d 710, 713 (Ky.1995). Therefore, we do not find that it was improper for the trial court to dismiss the complaint as it relates to recovery of payment under the theories discussed above from Metro Government, as those were separate from the declaratory action. We do, however, find that the trial court should have addressed the motion for declaratory judgment on the merits, as it does relate to the constitutionality of Metro Government's actions as they pertain to the fulfillment of its obligations under KRS 441.045(3). Therefore,

we remand this very limited issue back to the trial court to determine whether Metro Government's entry into the QCCT fulfilled its constitutional obligation under KRS 441.045(3) or whether Metro Government is constitutionally obligated, under KRS 441.045(3) to cover the cost of care provided to inmates by Jewish Hospital as a result of the diversion plan.

For the foregoing reasons, we affirm in part and vacate in part and remand for proceedings consistent with this opinion.

ALL CONCUR.