RENDERED:  APRIL 22, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0882-MR

COMMONWEALTH OF KENTUCKY,
KENTUCKY HERITAGE LAND
CONSERVATION FUND BOARD                          APPELLANT

v.          APPEAL FROM BULLITT CIRCUIT COURT
            HONORABLE RODNEY BURRESS, JUDGE
            ACTION NO. 19-CI-00762

LOUISVILLE GAS AND ELECTRIC
COMPANY; ISAAC W. BERNHEIM
FOUNDATION; AND EAST KENTUCKY
POWER COOPERATIVE, INC.                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, CETRULO, AND MAZE, JUDGES.

MAZE, JUDGE:  We commence our discussion of this interlocutory appeal by

emphasizing what this case is not about.  It is not about whether Louisville Gas and

Electric Company (LG&E) has the right to take a portion of property owned by the

Isaac W. Bernheim Foundation (Bernheim) for the construction of an underground natural gas pipeline. Rather, our review is limited **solely** to consideration of whether the doctrine of sovereign immunity precludes the Bullitt Circuit Court from proceeding to determine whether LG&E is entitled to exercise the right of eminent domain with respect to property upon which the Commonwealth of Kentucky owns a conservation easement. The appellant, Kentucky Heritage Land Conservation Fund Board (Board) insists that the trial court erred in refusing to dismiss the underlying condemnation action because: (1) the Board is immune from suit under the doctrine of sovereign immunity; (2) the General Assembly has not waived sovereign immunity by express language or overwhelming implication; (3) LG&E otherwise lacks the authority to condemn public property by statute; and (4) the doctrine of prior public use prohibits the condemnation of the property at issue. Having considered oral argument, the briefs of the parties, and the record, we affirm the decision of the Bullitt Circuit Court and hold that sovereign immunity does not bar the commencement of condemnation proceedings against the holder of a conservation easement.

Before addressing the merits of the Board's appeal, the Court must address three preliminary matters. First, the Court notes that Appellee, Isaac W. Bernheim Foundation, Inc., supports the arguments of the Board in its brief and has otherwise asserted its own arguments that the trial court erred by denying the

-2-

Board's motion to dismiss. In its brief, Bernheim further requested "that the decision of the Bullitt Circuit Court be reversed with directions to enter an Order dismissing with prejudice the action as against Bernheim . . . ." While the Court has considered the arguments of Bernheim, we need not address its arguments separately in this Opinion to the extent that Bernheim seeks affirmative relief.

While Bernheim filed a motion to dismiss in the trial court below, this appeal only concerns the denial of the *Board*'s motion to dismiss on the issue of sovereign immunity. The June 12, 2020, order of Bullitt Circuit Court clearly stated its scope:

> This matter comes before the Court on Defendants'
> Motions to Dismiss. This order shall address the
> Kentucky Heritage Land Conservation Fund Board's
> Motion to Dismiss.

Bernheim lacks standing to assert the sovereign immunity of the Commonwealth. Further, it is important to emphasize that there is no indication Bernheim's own rights were otherwise directly impacted by the June 12, 2020, order.

Second, Bernheim filed a motion to strike the appellee brief filed by LG&E. This Court has denied the motion to strike by separately entered order.

Third, although not addressed by the parties in briefing or at oral argument, the Court questions whether the abbreviated procedure contemplated by the Kentucky Eminent Domain Act precludes, by implication, the availability of motions to dismiss to test the legal sufficiency of a condemnation petition. In

*Ratliff v. Fiscal Court of Caldwell County, Kentucky*, 617 S.W.2d 36, 38 (Ky. 1981), the Supreme Court of Kentucky has explained the step-by-step procedure for condemnation proceedings under the Eminent Domain Act as follows:

> A petition seeking condemnation is required to contain those allegations necessary to show that the petitioner is entitled to exercise the right of eminent domain. KRS[1] 416.570(1). The condemnee's answer is "confined solely to the question of the right of the petitioner to condemn the property . . . ." KRS 416.600[.] **The statute directs the condemnee to raise immediately (if at all) the issues of the right to take**.

(Emphasis added.) While the Eminent Domain Act does not explicitly authorize a condemnee to appeal a trial court's interlocutory judgment concerning the condemnor's right to take, the *Ratliff* Court held that constitutional considerations mandate the availability of an immediate appeal to a losing condemnee. *Id.*

This Court has recently stated that when a defendant raises the issue of the condemnor's right to take, "[t]here [is] no need for, nor right to, another hearing" beyond the hearing provided by KRS 416.610(4). *Allard v. Big Rivers Electric Corp.*, 602 S.W.3d 800, 808 (Ky. App. 2020).

As cited above, the Supreme Court of Kentucky has recognized that KRS 416.600 "directs the condemnee to raise immediately (*if at all*) the issues of the right to take." *Ratliff*, 617 S.W.2d at 38 (emphasis added). This Court has also held that any exceptions to a condemnor's right to take must be raised in the

---

[1] Kentucky Revised Statutes.

-4-

answer under KRS 416.600. *Commonwealth, Transportation Cabinet, Dep't of Highways v. Wireman*, 714 S.W.2d 159, 162 (Ky. App. 1986). KRS 416.610(4) further provides that the issue of a condemnor's right to take shall be tried on the pleadings:

> If the owner has filed **answer or pleading** putting in issue the right of the petitioner to condemn the property or use and occupation thereof sought to be condemned, the court shall, without intervention of jury, proceed forthwith to hear and determine whether or not the petitioner has such right.

(Emphasis added.) Under Kentucky law, a motion to dismiss is not a pleading. *See Vincent v. City of Bowling Green*, 349 S.W.2d 694, 696 (Ky. 1961); CR[2] 7.01. It is the trial court's determination of a condemnor's right to take, based on the pleadings, that triggers the right to take an immediate appeal. *Ratliff*, 617 S.W.2d at 39.

The requirement that all issues concerning a condemnor's right to take be raised in the answer under KRS 416.600 is consistent with federal eminent domain law. A motion to dismiss is not authorized in any eminent domain proceeding under federal law. Federal Rules of Civil Procedure (FRCP) 71.1(e)(3). The Supreme Court of Kentucky has generally interpreted the Kentucky Eminent Domain Act consistently with the federal eminent domain law. *See Foster v. Sanders*, 557 S.W.2d 205, 211 (Ky. App. 1977). In federal court, a

---

[2] Kentucky Rules of Civil Procedure.

motion to dismiss is specifically not permitted in a condemnation proceeding because the rule governing condemnation proceedings instructs that a defendant's answer "state all the defendant's objections and defenses to the taking." FRCP 71.1(e)(3) further specifically provides:

> [a] defendant waives all objections and defenses not stated in its answer. **No other pleading or motion asserting an additional objection or defense is allowed**.

(Emphasis added.) In *Atlantic Seaboard Corporation v. Van Sterkenburg*, 318 F.2d 455, 458 (4th Cir. 1963), the Court stated, "[w]e need not consider the dubious merits of the motion for a more definite statement or of the motion to dismiss, for they were not allowable pleadings." The Court explained:

> Whatever defenses and objections are available may be raised by answer. **The prohibition of other pleadings clearly had, as its purpose, an early joinder of issue and the elimination of the possibility of extended delay through the presentation of preliminary pleadings with resultant hearings and orders**. One pleading to raise all objections and defenses to the taking and one hearing to dispose of them are contemplated, not successive pleadings and successive hearings spanning a much longer period of time. The Rule's prohibition of any pleading other than an answer is clear and unequivocal. The preliminary motions tendered here were unallowable.

*Id*. (emphasis added) (footnote omitted). Similarly, this Court has described the procedures under KRS 416.540 to be "summary." *Mother of God Cemetery Ass'n, Inc. v. Commonwealth, Transportation Cabinet, Dep't of Highways*, 759 S.W.2d

-6-

69, 71 (Ky. App. 1988). The federal authority cited above appears to be persuasive and consistent with the precedent of the Kentucky Supreme Court in *Ratliff* that any objections to the right to take must be made immediately in the answer, if at all.

In sum, the statutory framework for condemnation proceedings and the caselaw interpreting those statutes clearly envision that there be an expedited proceeding resulting in **but one interlocutory appeal**. We therefore hold that the sovereign immunity defense must be raised, if at all, in the answer or other pleading as required by KRS 416.600.

Although this procedural defect would allow us to affirm the decision of the trial court on the basis that a motion to dismiss is not an allowable pleading and that a single interlocutory appeal is available, we nevertheless turn to an analysis of the Board's sovereign immunity arguments. We commence with a recitation of the facts.

The Kentucky General Assembly has articulated a public policy of acquiring, maintaining, promoting, and funding the conservation of certain lands "for use as state parks, recreation areas, state forests, nature preserves, wildlife management areas, and wetlands." KRS 146.555. KRS 146.555 states that it is "in the public interest to promote and fund the conservation of such areas." In furtherance of this policy, the General Assembly established the Board for the

purpose of administering the Kentucky Heritage Land Conservation Fund and to review and approve all grants payable from the fund. KRS 146.560(1). The Fund consists of moneys in the State Treasury received as "state appropriations, gifts, grants, federal funds, and tax receipts." KRS 146.570(1). The Board is further directly authorized to allocate moneys from the Fund "to private, nonprofit land trust organizations, state agencies, local governments, and state colleges and universities" in accordance with the provisions of KRS 146.550 to 146.570 and other applicable law. KRS 146.570(4)(f).

Bernheim is a nonprofit Kentucky corporation organized for the purpose of connecting people with nature. On October 15, 2018, Bernheim purchased 494.33 acres of land in Bullitt County, Kentucky. The 494.33-acre parcel is known as the Simon Tract. On the same day, October 15, 2018, Bernheim executed a conservation easement in favor of the Board in exchange for $706,500.00 (1/2 of the purchase price).[3] The conservation easement between Bernheim and the Board states in pertinent part as follows:

---

[3] Bernheim also received $706,500.00 (1/2 of the purchase price) from the United States Fish and Wildlife Service (USFWS) in exchange for a separate deed restriction concerning the conservation of the property. The interest of the United States Fish and Wildlife Service in relation to these proceedings is described in *Louisville Gas and Electric Company v. Isaac W. Bernheim Foundation*, No. 3:20-cv-688-CRS, 2021 WL 1093638, *2 (W.D. Ky. Mar. 22, 2021) ("The authorities indicate that whatever purported interest USFWS may have in the property, as the product of a deed restriction contained in an instrument to which USFWS is not a signatory, it would not be superior to LG&E's exercise of the power of eminent domain if the proposed taking is found to be valid.").

THIS DEED OF CONSERVATION EASEMENT is entered into by and between the Isaac W. Bernheim Foundation (hereinafter "GRANTOR"), and the Commonwealth of Kentucky, by and through the Finance and Administration Cabinet, *for the use and benefit of the Kentucky Heritage Land Conservation Fund Board* (hereinafter "GRANTEE"). . . .

D. Disturbance of Natural Features. Any disturbance or alteration of the Property and its natural conditions through the removal of vegetation, flora, fauna, soil, rocks, or other components is prohibited unless it is consistent with this Easement and expressly permitted in writing by GRANTOR and GRANTEE. . . .

O. Other Structures and Improvements. Structures or facilities shall not be erected on the Property unless deemed necessary to provide Environmental Education Programs or to mitigate safety concerns and unless GRANTOR and GRANTEE first agree in writing to the structures. . . .

Q. Rights of Way. The granting of rights of way through the Property for the installation, transporting, or use of lines . . . for gas . . . is strictly prohibited. . . .

(Emphasis added.)

LG&E is a public utility that provides natural gas service to the people of the Commonwealth and Bullitt County. On July 31, 2019, LG&E filed a condemnation action against the Board, Bernheim, and East Kentucky Power Cooperative in Bullitt Circuit Court seeking to acquire portions of the property subject to the conservation easement for the purpose of constructing an underground natural gas pipeline. On November 15, 2019, the Board filed a

motion to dismiss the action because LG&E allegedly failed to tender an offer to purchase the Board's interest in the subject property prior to commencing the condemnation proceeding. It does not appear that the trial court has ruled upon this issue. Subsequently, and pertinent to this interlocutory appeal, on March 4, 2020, the Board filed a motion to dismiss the action in its entirety on the grounds that sovereign immunity prohibited LG&E from maintaining an action to condemn a state-owned easement. The trial court denied the Board's motion to dismiss in an order entered on June 12, 2020. This interlocutory appeal followed.

The Board first argues that sovereign immunity precludes the commencement of condemnation proceedings against property subject to a conservation easement when the holder of the easement is the Commonwealth. As a general rule, the denial of a motion to dismiss is not appealable. *Halle v. Banner Industries of N.E., Inc.*, 453 S.W.3d 179, 184 (Ky. App. 2014). However, this Court has jurisdiction of interlocutory appeals concerning the denial of a defense of sovereign immunity because "immunity entitles its possessor to be free 'from the burdens of defending the action, not merely . . . from liability.'" *Breathitt County Board of Education v. Prater*, 292 S.W.3d 883, 886 (Ky. 2009) (quoting *Rowan County v. Sloas*, 201 S.W.3d 469, 474 (Ky. 2006)).

The issue of whether a public entity is immune from suit is a legal question which an appellate court reviews *de novo*. *Sloas*, 201 S.W.3d at 475. The

-10-

scope of review of an interlocutory appeal involving sovereign immunity is limited to **the issue of immunity and nothing more**. *Baker v. Fields*, 543 S.W.3d 575, 578 (Ky. 2018). KRS 416.620(2) also allows an immediate appeal from an interlocutory order adjudicating the issue of a condemnor's right to take. *Ratliff*, 617 S.W.2d at 38. However, the order at issue in this appeal **solely concerns the denial of sovereign immunity as a defense**. As previously emphasized, the trial court has yet to address LG&E's ultimate right to take. Our review is thus confined to issue of whether sovereign immunity prevents the commencement of condemnation proceedings.

Sovereign immunity "is an inherent attribute of a sovereign state that precludes the maintaining of any suit against the state unless the state has given its consent or otherwise waived its immunity." *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001). A "suit" means "[a]ny proceeding by a party or parties against another in a court of law[.]" *Suit*, BLACK'S LAW DICTIONARY (11th ed. 2019). The concept of sovereign immunity arises from the common law rather than any constitutional considerations. *Yanero*, 65 S.W.3d at 523. However, Section 231 of the Kentucky Constitution empowers the General Assembly to "direct in what manner and in what courts suits may be brought against the Commonwealth." Section 231 of the Kentucky Constitution is not the source of sovereign immunity. *Yanero*, 65 S.W.3d at 524. Rather, Section 231 is a provision "that permit[s] the

General Assembly to waive the Commonwealth's inherent immunity . . . ." *Id.* While the defense of sovereign immunity typically applies to claims against the Commonwealth for monetary damages sounding in tort or contract, the former Court of Appeals has held that sovereign immunity also applies to claims against real property held by the Commonwealth. *Kentucky State Park Commission v. Wilder*, 256 Ky. 313, 317, 76 S.W.2d 4, 6 (1934).

In *Wilder*, a corporation conveyed 600 acres of land, composed of five different tracts, to the Commonwealth for the use and benefit of the Kentucky State Park Commission. The deed contained a restriction, which stated the property "shall be preserved in its existing state, and that the property herein conveyed shall be used by second party as an exclusively State owned and State controlled park, and for State Park purposes exclusively." *Id.* at 314, 76 S.W.2d at 4. Subsequently, several private individuals (plaintiffs) filed suit against the Commission alleging that they were the joint owners of an undivided 49/50 interest in a 200-acre tract encompassed within the property conveyed by the corporation to the Commission. The plaintiffs requested that the property be subjected to a judicial sale with the proceeds divided among the parties according to their respective interests. The Commission argued that sovereign immunity precluded the relief requested by the plaintiffs.

The Court held that when the Commonwealth holds title to real property that is used for a public purpose, the Commonwealth is the real party in interest in any suit affecting its rights and interest in the property. *Wilder*, 256 Ky. at 315, 76 S.W.2d at 5. In other words, a claim against real property held by the Commonwealth is a claim against the Commonwealth itself, rather than a claim against the governmental entity that acquired the real property as an agent of the Commonwealth. *Id.* The Court held that, in the absence of a waiver of sovereign immunity, the plaintiffs' suit to force a judicial sale of state property could not proceed. *Id.* However, the Court also noted that the plaintiffs were permitted to institute an action against the Commonwealth "for damages growing out of the taking, injuring, or destroying of private property for public purposes." *Id.* at 317, 76 S.W.2d at 6.

In the present case, the Board used state funds to acquire the conservation easement pursuant to KRS Chapter 146. The conservation easement was granted in the name of the "Commonwealth of Kentucky, by and through the Finance and Administration Cabinet, for the use and benefit of the Kentucky Heritage Land Conservation" as required by KRS 56.030(1). KRS 56.030(1) states in pertinent part that "the Commonwealth shall be named as the grantee of any land given or devised to the state, or partly or wholly paid for out of state funds, and of any land or interest in land conveyed to it or for its use or for the use of any

of its agencies or officers." Under *Wilder*, we conclude that sovereign immunity applies to the present case because the proceedings impact the property rights of the Commonwealth itself.

Furthermore, the analysis of the former Court of Appeals in *Wilder* explained that cases concerning state property may proceed even when the Commonwealth itself is not a party to an action concerning property to which it held title:

> It will therefore be seen that not only was the conveyance made directly to the commonwealth, but that under the statutes hereinbefore quoted and referred to, the title to the land in controversy vested in the commonwealth to be held and used for public purposes. . . . Although the park commission is nominally designated as a party defendant and the state is not made a party to the action, it is in fact the real party in interest and against which relief is sought. **This is, therefore, to all intents, purposes, and effect a suit against the commonwealth**, and this being true, it only remains to be determined whether an action of this character may be maintained against the commonwealth.

256 Ky. at 315, 76 S.W.2d at 5 (emphasis added).

In addition, the Supreme Court made clear in *Commonwealth v. Kentucky Retirement Systems*, 396 S.W.3d 833, 840-41 (Ky. 2013), that it is not necessary for the Attorney General to protect the Commonwealth's interest in the litigation where those interests are otherwise protected:

> Retirement Systems candidly admits that it does not wish to be "left to defend the statute alone," and that

-14-

since a constitutional question is involved, the Attorney General is better situated to defend the action. KRS 418.075 requires that the Attorney General be served with a copy of the petition if the validity or constitutionality of a statute is at issue, as it is here. The Attorney General in turn has certain statutory duties which include notifying the Legislative Research Commission of the claim and deciding whether he will be "a party to that action." KRS 418.075(1), (3).

Understandably, if the petition is to be served on the Attorney General, it might be perceived that he, as the chief legal officer of the state, be named as the "Commonwealth." But that is not necessary because the interests of the Commonwealth are already represented by Retirement Systems, which is a necessary party. *Cf. Lassiter v. American Exp. Travel Related Services Co., Inc.*, 308 S.W.3d 714, 718 (Ky. 2010) (allowing naming of Department of Treasury to be "functional equivalent" of naming state treasurer in official capacity).

. . .

In either instance, the interests of the state will be adequately represented. Here, the Attorney General has filed a notice with the court that he "declines to participate in the defense of the statute." Since the state was already a party to this action through Retirement Systems, and there are no other reasons for the Attorney General to be involved, that choice is his to make under KRS 418.075.

Here, although the Commonwealth was not named as a party in the condemnation suit, the complaint was served upon the Attorney General. Because this suit does not challenge the constitutionality of a statute, the dictates of KRS 418.075 are not implicated. Under these circumstances, there was no requirement for the Attorney

-15-

General to formally decline to participate in the action. Thus, the Board's right to assert the defense of sovereign immunity is clearly established in our jurisprudence and it was competent to defend the Commonwealth's interests in this case.

Once the propriety of a sovereign immunity defense has been established, the question becomes whether the Legislature has waived that immunity "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Withers v. University of Kentucky*, 939 S.W.2d 340, 346 (Ky. 1997) (quoting *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S. Ct. 1347, 1361, 39 L. Ed. 2d 662, 678 (1974)). The Board concedes that LG&E is a public utility with statutory eminent domain powers under KRS 278.502 and that a conservation easement is generally subject to condemnation pursuant to KRS 382.850(2). Nevertheless, the Board seeks to avoid the import of KRS 382.850(2) by arguing that the statute does not waive sovereign immunity by express language or overwhelming implication. We disagree.

The issue of whether KRS 382.850(2) constitutes a waiver of sovereign immunity is one of first impression. The interpretation of a statute begins with the text of the statute itself. *Garrard Co. v. Middleton*, 520 S.W.3d 746, 750 (Ky. 2017). The Supreme Court of Kentucky has instructed that "[a] statute should be construed, if possible, so as to effectuate the plain meaning and

-16-

unambiguous intent expressed in the law." *Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth of Kentucky, Transportation Cabinet*, 983 S.W.2d 488, 492 (Ky. 1998) (citations omitted). The plain meaning of a statute is determined by reference to statutory definitions if statutory definitions are provided. *Utility Management Group, LLC v. Pike County Fiscal Court*, 531 S.W.3d 3, 8 (Ky. 2017). For terms that are undefined by statute, the plain meaning is determined by reference to the common usage of the language used by the Legislature. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 58 (Ky. 2011). A statute "must also be viewed in context rather than in a vacuum; other relevant parts of the legislative act must be considered in determining the legislative intent." *Jefferson County Board of Education v. Fell*, 391 S.W.3d 713, 719 (Ky. 2012). KRS 382.850(2) defines the relationship between conservation easements and eminent domain as follows:

> **A conservation easement** shall not operate to limit, preclude, delete or require waivers for the conduct of coal mining operations, including the transportation of coal, upon any part or all of adjacent or surrounding properties; and **shall not operate to impair or restrict any right or power of eminent domain created by statute, and all such rights and powers shall be exercisable as if the conservation easement did not exist**.

(Emphases added.) A conservation easement is defined in KRS 382.800(1) as follows:

"Conservation easement" means a nonpossessory interest of a holder in real property imposing limitations or affirmative obligations, the purposes of which include retaining or protecting natural, scenic, or open-space values of real property, assuring its availability for agricultural, forest, recreational, or open-space use, protecting natural resources, maintaining or enhancing air or water quality, or preserving the historical, architectural, archaeological, or cultural aspects of real property.

KRS 382.800(2)(a) recognizes that the holder of a conservation easement may be a "governmental body empowered to hold an interest in real property under the laws of this state or the United States[.]"

Under KRS 382.850(2), a conservation easement "shall not operate to impair or restrict any right or power of eminent domain created by statute, and all such rights and powers shall be exercisable as if the conservation easement did not exist." If it is assumed that the conservation easement did not exist, then the issue of the Commonwealth's ownership interest in the conservation easement is removed as an obstacle to the pursuit of condemnation proceedings by a party with a statutory right of eminent domain. We reiterate that the General Assembly was aware that a governmental entity could be the holder of a conservation easement under KRS 382.850(2). By employing the legal fiction that a conservation easement does not exist upon the exercise of a statutory power of eminent domain, the General Assembly expressed its intention that a conservation easement held by a governmental entity is subject to the exercise of any statutory power of eminent

-18-

domain. Therefore, we hold that KRS 382.850(2) constitutes a waiver by overwhelming implication, if not express language, of sovereign immunity where a governmental interest in a conservation easement is asserted as a defense to condemnation proceedings initiated by a party with a statutory right of eminent domain.

This Court has reviewed the cases cited by the Board regarding the waiver of sovereign immunity by express language or implication.[4] These cases do not impact our analysis of KRS 382.850(2) because each cited case involves distinguishable controlling statutes and factual situations where a private individual or corporation sought monetary recompense for an alleged harm committed by a government entity. In the present case, LG&E is not seeking recompense for a harm. Instead, LG&E has attempted to exercise its statutory right of eminent domain pursuant to KRS 278.502 as permitted by KRS 382.850(2).

The Board argues that there is a reasonable alternative interpretation of KRS 382.850(2) that precludes a finding of waiver of sovereign immunity. The Board argues that the import of KRS 382.850(2) is simply "to provide that the existence of a conservation easement on real property shall not alone serve as a defense to condemnation." In other words, according to the Board, KRS

---

[4] *Ruplinger v. Louisville/Jefferson County Metro Government*, 607 S.W.3d 583 (Ky. 2020); *Bryant v. Louisville Metro Housing Authority*, 568 S.W.3d 839 (Ky. 2019); *Department of Corrections v. Furr*, 23 S.W.3d 615 (Ky. 2000); *Jewish Hosp. Healthcare Services, Inc. v. Louisville/Jefferson County Metro Government*, 270 S.W.3d 904 (Ky. App. 2008).

382.850(2) merely preserves the right of eminent domain and subjects conservation easements to the right of eminent domain, but does not speak to the immunity of a governmental holder of a conservation easement. This Court cannot accept the Board's alternative interpretation of KRS 382.850(2) because the Board's interpretation does not give full effect to the provision in KRS 382.850(2) that any statutory right of eminent domain "shall be exercisable as if the conservation easement did not exist."

Under the principles of statutory interpretation, no subsection of a law should be interpreted so as to render it meaningless. *Brooks v. Meyers*, 279 S.W.2d 764, 766 (Ky. 1955). In KRS 382.850(2), the use of the phrase, "all such rights and powers shall be exercisable as if the conservation easement did not exist[,]" appears to be a unique modification of the Uniform Conservation Easement Act (UCEA). The text of the UCEA does not address the issue of whether a conservation easement can be condemned through eminent domain. However, the preface to the 2007 version provides that "the Act neither limits nor enlarges the power of eminent domain[,]" instead leaving "the scope of that power" to "the adopting state's eminent domain code and related statutes." *See* Nat'l Conf. of Comm'rs on Unif. State L., *Prefatory Note at* 4 to Uniform Conservation Easement Act (1981) (amended 2007). Unlike other jurisdictions, the Kentucky General Assembly did not adopt any language from the preface to

the UCEA concerning the enlargement of eminent domain. *Compare, e.g.*, Ariz. Rev. Stat. Ann. § 33-272(A) ("This article neither limits nor enlarges the power or purposes of eminent domain, zoning, subdivision regulations or any right of condemnation under the laws of this state.").

This Court cannot endorse an interpretation that simply ignores a portion of the statutory text. This Court does not consider the phrase, "all such rights and powers shall be exercisable as if the conservation easement did not exist," to be mere surplusage because the General Assembly specifically added these words to the statute contrary to the language set out in the preface and text of the Uniform Conservation Easement Act and comparable statutes enacted by other jurisdictions. The Legislature is presumed to be aware of existing laws when enacting a new statute. *Pearce v. University of Louisville, by and through its Bd. of Trustees*, 448 S.W.3d 746, 760 (Ky. 2014).

The Board next argues that LG&E lacks a statutory right to eminent domain in the context of KRS 382.850(2). While the Board concedes that LG&E possesses a statutory right of eminent domain under KRS 278.502 over private property, the Board argues that LG&E lacks a statutory right of eminent domain over property owned by the Commonwealth. The Board further argues that KRS 382.850(2) does not enlarge the power of eminent domain. Consequently, the

-21-

Board argues that LG&E cannot condemn public property under KRS 382.850(2) because LG&E cannot condemn public property under KRS 278.502.

The Board's interpretation of KRS 382.850(2) attempts to divorce the phrase, "any right or power of eminent domain created by statute" from the context of the rest of the subsection, which provides that a conservation easement does not operate to impair any statutory power of eminent domain and that *all such powers are exercisable as if the conservation easement did not exist.* In *Kelly v. Thompson*, 983 S.W.2d 457, 458 (Ky. 1998), *as modified on denial of reh'g* (Jan. 21, 1999), the Supreme Court of Kentucky stated:

> It is within the authority of the General Assembly to define the limits of the right of eminent domain *and* to establish the specific terms under which the condemning authority may exercise such power. As such, it would necessarily include defining the property interest taken and retained in an eminent domain action.

(Emphasis added.) The General Assembly has created a statutory power of eminent domain through the enactment of KRS 278.502.

This Court has interpreted KRS 278.502 as an expression of the Legislature's intent "to delegate the state's power of eminent domain to those pipeline companies that are, or will be, regulated by the PSC [Public Service Commission]." *Bluegrass Pipeline Co., LLC v. Kentuckians United to Restrain Eminent Domain, Inc.*, 478 S.W.3d 386, 392 (Ky. App. 2015). This Court has further stated that KRS 278.502 is "unambiguous" and expressly grants the

"authority to exercise the power of eminent domain." *Diebold v. Louisville Gas and Electric Co.*, No. 2019-CA-000393-MR, 2020 WL 113936, at *2 (Ky. App. Jan. 10, 2020). On the basis of the foregoing caselaw, we conclude that LG&E possesses a statutory power of eminent domain under KRS 278.502. The possession of a statutory power of eminent domain under KRS 278.502 further constitutes "any right or power of eminent domain created by statute," within the meaning of KRS 382.850(2).

This Court acknowledges that the exercise of LG&E's power of eminent domain may ordinarily be limited to private property under KRS 416.540(1). Indeed, the general rule is that a condemnor to whom the power of eminent domain has been delegated may not condemn public property unless authority is expressly or impliedly granted by statute. 29A C.J.S. *Eminent Domain* § 61 (2022). While LG&E may not have the general power to condemn public property under KRS 278.502 and KRS 416.540(1), KRS 382.850(2) expresses the Legislature's intention that a conservation easement cannot be used to impede the exercise of any statutory power of eminent domain that the Legislature has otherwise conferred by statute. If the existence of the conservation easement is disregarded, as KRS 382.850(2) instructs, then LG&E would undoubtedly have the power to condemn the property at issue.

Moreover, KRS 382.850(2) does not enlarge the power of eminent domain. Rather, KRS 382.850(2) limits the effect of the rights afforded to the holder of a conservation easement when any power of eminent domain is exercised. The Board cites KRS 76.110(1) as an example of a statute through which the General Assembly explicitly granted metropolitan sewer districts the right to acquire land by eminent domain whether the land is "owned or held for public use by corporations, associations, or other persons having the power of eminent domain, or otherwise held or used for public purposes." KRS 278.502 admittedly does not explicitly grant the operator of a natural gas pipeline, in public service, the right to take property held or used for a public purpose. However, the use of the phrase, "all such rights and powers shall be exercisable as if the conservation easement did not exist[,]" which the General Assembly inserted into KRS 382.850(2), obviates the necessity of analyzing the differences between the statutes creating the right of eminent domain because, in the context of a conservation easement, any statutory right of eminent domain shall be exercisable as if the conservation easement did not exist.

Similarly, the fact that KRS 416.140 specifically allows public utilities to place distribution lines on or under a public roadway or watercourse without the exercise of eminent domain, while the Eminent Domain Act does not explicitly bestow such rights for the placement of distribution lines on a

-24-

conservation easement, does not negate the plain import of KRS 382.850(2), which again provides that any statutory right of eminent shall be exercisable as if the conservation easement did not exist. If the General Assembly had intended that conservation easements should only yield to the exercise of a statutory right of eminent domain when the authorizing statute explicitly authorizes the condemnation of public property, then the language intentionally inserted into the enactment of KRS 382.850(2) would be entirely superfluous.

The Board finally argues that LG&E lacks the power to condemn property owned by the Commonwealth under the doctrine of prior public use. Again, we disagree.

This Court has recognized the general rule that "land devoted to one public use cannot be taken for another public use in the absence of express legislative authority for the taking." *Jefferson County by and through Hollenbach v. South Central Bell Tel. Co.*, 555 S.W.2d 629, 632 (Ky. App. 1977). In addition, the former Court of Appeals explained the basis of the doctrine as follows:

> We think that it follows, as a necessary consequence of the power to condemn, that this power may be exercised, not only upon private property, but upon property devoted to a public use, especially when the new use does not destroy the previous use, and when both of the uses may be enjoyed at the same time without the unreasonable impairment of either. . . . The authority to take property seized and appropriated to another public use may be implied from the language of the statute, but this can only be so where the words employed and the

evident intent of the statute make it clearly the duty of the courts to give force to the implication. The intent of the Legislature to destroy the rights granted by former statutes must unequivocally appear. A grant of authority to appropriate land seized under former statutes, or previously seized for public use, cannot ordinarily be inferred from a mere general grant. The general rule is that, if the two uses are not inconsistent, both may stand together without material impairment of the first. Authority for the second use may be implied from a general grant; but, if they cannot coexist without material impairment of the first, authority to take from the second cannot be implied from a mere general grant of authority to condemn. . . .

. . . When the state grants to a public or private corporation the right to exercise a part of its sovereign power to take private property for a public use, it always does so with the implied understanding that future control over the property so taken is not surrendered by the state. It reserves for the public good the power to take again, and as many times as may be necessary, so much of the property as is needful for the use of the public, although this may in some cases go to the extent of destroying the first use.

*Louisville & N.R. Co. v. City of Louisville*, 131 Ky. 108, 115-16, 114 S.W. 743, 746 (1908). The Court further stated "[w]hen the new public use will destroy the previous use to which the property was devoted, then the authorities before cited agree that the power must be conferred in express terms and strictly followed . . . ." *Id.* at 116, 114 S.W. at 746.

The doctrine of prior public use "has particular application when one condemning authority seeks property held by another condemning authority and

-26-

neither possesses a superior power of condemnation by statute or court decision."

*Housing Authority of City of Fort Lauderdale v. Florida, Dep't of Transp.*, 385

So.2d 690, 691 (Fla. Dist. Ct. App. 4th 1980) (citations omitted).  In other words,

the doctrine of prior public use operates to resolve competing claims to property

under a right of eminent domain.  *See generally Kipling v. City of White Plains*, 80

S.W.3d 776, 784-85 (Ky. App. 2001); *Crain v. Hardin Co. Water Dist. No. 2*, No.

2015-CA-000499-MR, 2016 WL 3453206 (Ky. App. Jun. 17, 2016).

We thus conclude that the plain language of KRS 382.850(2)

authorizes a statutory right of eminent domain to prevail over a conservation

easement because a conservation easement is assumed not to exist upon the

exercise of a statutory right of eminent domain.  If it is assumed that the Board's

conservation easement does not exist, then there is no prior public use to impede

the exercise of LG&E's right of eminent domain.

Accordingly, the order of the Bullitt Circuit Court is affirmed.


ALL CONCUR.

BRIEFS FOR APPELLANT:

Timothy J. Mayer
Kathleen Saunier
Frankfort, Kentucky

ORAL ARGUMENT FOR
APPELLANT:

Timothy J. Mayer
Frankfort, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE LOUISVILLE GAS
AND ELECTRIC COMPANY:

Monica H. Braun
Steven B. Loy
Mary Ellen Wimberly
Lexington, Kentucky

BRIEF FOR APPELLEE ISAAC W.
BERNHEIM FOUNDATION:

Tom FitzGerald
Frankfort, Kentucky

Randal A. Strobo
Clay A. Barkley
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLEE ISAAC W. BERNHEIM
FOUNDATION:

Tom FitzGerald
Frankfort, Kentucky